Decided at PENDLETON, July 20, 1895.

## JOSEPHI v. FURNISH.

[41 Pac. 424.]

1. DISSOLUTION OF ATTACHMENT BY GENERAL ASSIGNMENT — CLAIM OF THIRD PERSON.—A general assignment for the benefit of creditors does not dissolve an attachment so as to support the claim of one who claims under the assignor and is seeking to replevin from the sheriff.

2. IMPEACHING TESTIMONY — SALE — VENDOR AND VENDEE.— While it is true that statements made by a vendor of chattels after the sale are inadmissible, in the absence of fraud or collusion, to impeach the title of the vendee, (*Krewson* v. *Purdom*, 11 Or. 266, cited with approval,) yet such statements may be shown to impeach the veracity of the witness, if he denies having made them: *State* v. *Fitzhugh*, 2 Or. 234.

3. INSTRUCTING JURY AS TO PURPOSE OF TESTIMONY.— Where testimony is admitted that is competent for one purpose but incompetent for another, the jury should be instructed as to the purpose for which they may consider it: *State* v. *Fitzhugh*, 2 Or. 234.

4. LIMIT OF IMPEACHING EVIDENCE.— When an impeaching witness has answered the question asked for the purpose of contradicting the witness whose veracity is attacked, the examination should stop.

5. ADMISSIONS OF VENDOR — EVIDENCE.— The purchaser of a stock of goods is not bound by subsequent admissions of the seller to a third person, unless he heard them and had an opportunity to correct any statement inconsistent with the facts as they existed.

6. EFFECT OF DISREGARDING AN ADMISSION IN THE PLEADINGS.— Where the value of certain property is admitted by the pleadings, but the plaintiff introduces testimony as to its reasonable value, the defendant may introduce testimony also on the same subject.

APPEAL from Umatilla: MORTON D. CLIFFORD, Judge.

This is an action by D. E. Josephi against W. J. Furnish to recover the possession of a certain stock of jewelry seized on legal process as the property of one William Wilkinson, of Pendleton, Oregon. The defendant justifies the taking as sheriff of Umatilla County, under several valid writs of attachment duly issued about November seventh, eighteen hundred and ninety-three, in causes pending against Wilkinson, and alleges that Wilkinson was the owner of the property when it was attached. As a further defense he alleges that on or about the fifteenth day of March, eighteen hundred and ninety-three, Wilkinson made a pretended sale of said stock to the plaintiff for the purpose of hindering, delaying, and defrauding creditors, setting forth facts attending the alleged pretended sale, and averring that it was and is fraudulent and void as against the creditors of Wilkinson. These allegations are denied by plaintiff, and for the purpose of showing a dissolution of the attachments, he alleges in his reply that on January —, eighteen hundred and ninety-four, and prior to the entry of judgment in any of said causes, Wilkinson made a general assignment for the benefit of all his creditors. Upon the trial the verdict was for the defendant, and from the judgment rendered thereon plaintiff appeals.

REVERSED.

For appellant there was a brief by *Messrs. Dolph, Mallory, Simon and Strahan,* and an oral argument by *Mr. Rufus Mallory.*

For respondent there was a brief by *Messrs. Chas. H. Carter,* and *Bailey, Balleray and Redfield,* and an oral argument by *Messrs. Carter* and *John J. Balleray.*

Opinion by MR. JUSTICE WOLVERTON.

1.  Appellant contends that the assignment by Wilkinson for the benefit of his creditors prior to the entry of judgments against him in said actions dissolved the attachments *proprio vigore,* and the sheriff could no longer hold the property thereunder.   To state the point briefly, suppose A attaches the goods of B, B assigns to D, and C, claiming under B, brings replevin against A.   Now A justifies under the attachment, and C, to defeat the justification, pleads the assignment, claiming that thereby the attachment is dissolved, and the goods discharged from the lien thereof.   Can such a plea avail C?   We think not. The plea of assignment does not go far enough.   The plaintiff should have plead that the property in dispute went with the assignment, and that the assignee was the owner; but this would defeat his own action, hence it was not intended that it should be so stated.   The court is asked, however, to give this effect to the assignment for the purpose of destroying the basis upon which the defense is founded.   The proposition proves too much.   And if it were tenable, every transfer of personal property in fraud of creditors would find ample support in the act of the debtor, against which there could be no relief.   Unless the assignment carried the property with it, we are unable to see how it could affect the attachment, which gives a special property in the thing attached sufficient to maintain its possession against every person except the assignee and those claiming under him.   If he or any of those so claiming was pursuing the property, then the assignment would become relevant· otherwise not. unless

for the purpose of showing property in a third person. See *Tichenor* v. *Coggins,* 8 Or. 270.

2. At the trial evidence was offered tending to show that on March sixth, eighteen hundred and ninety-three, the plaintiff purchased of Wilkinson the stock of jewelry, together with the notes and accounts connected with the business, and one hundred and sixty acres of land, for four thousand five hundred dollars, and placed Wilkinson's watchmaker, one H. L. Hasbrouck, in charge thereof, who remained in possession for some two months, when Wilkinson was restored to and remained in possession from May until September, at which latter date Hasbrouck again resumed and was in possession at the date of the attachments. William Wilkinson, being called as a witness for the plaintiff, gave testimony as to the terms and circumstances attending the alleged sale by him to the plaintiff, tending to show that it was fair and *bona fide,* and for an adequate consideration. Upon cross-examination, he was asked "whether or not he on the evening of March sixth, eighteen hundred and ninety-three, being the day of the alleged sale to Josephi, about five o'clock in the evening, at Watson and Luhrs' planing mill, in the county of Umatilla and State of Oregon, didn't tell Mr. W. M. Brown that he had had Josephi come here, and he had given him a bill of sale to stop a blackmailing suit, and that Messrs. Leasure and Stillman were to sue him for Mrs. Nale, and that he only put the property out of his hands to stop that blackmailing suit, and that the property was his just the same, or words to that effect?" To which the witness answered "No; I showed Brown the receipt from Mrs. Nale. The consideration of the receipt was fifty dollars. I showed him the receipt in the store; I think we were standing near the stove; no one else was present. It is not a fact that at the time and place I told Mr. Brown and said to him that the store was mine again

the same as before, or words to that effect." Whereupon, the question put to Wilkinson was repeated to the said W. M. Brown, who was called for defendant, and he was asked whether or not Wilkinson made the statements therein contained, to which he answered, "Yes, sir." Witness was further asked: "Did he say anything else about this transaction with himself and Josephi at that time?" A.—"Yes, sir; I asked him if he owed that firm any money, and he said 'No.' He said the stock was clear and it was his." And again: "Did you ever have any other conversation with William Wilkinson on or about the transfer of the stock?" A.—"Yes, sir; later on in April. He showed me a receipt where he had settled up with Mrs. Nale for the blackmailing suit for the sum of fifty dollars, and said that the store was his again." All these questions were objected to as irrelevant and incompetent for the reason that the declarations of Wilkinson made after the sale could not bind Josephi. The further objection was made to the first question that if it was asked for the purpose of impeachment it was touching an immaterial matter, and therefore incompetent. The overruling of these objections is assigned as error. It is undoubtedly true that a witness, not a party to the record, cannot be impeached by showing that he has made contradictory statements concerning matters immaterial or irrelevant to the issues in the case. As put by Wharton, "the statement which it is intended to contradict must involve facts in evidence": 1 Wharton on Evidence, § 551.

It is also well settled that the declarations of a vendor of goods and chattels after he has parted with all interest and possession are inadmissible, in the absence of fraud and collusion, to impeach or overthrow the title of the vendee: *Krewson* v. *Purdom,* 11 Or. 266 (3 Pac. 822); *Keystone Manufacturing Company* v. *Johnson,* 50 Iowa, 142; *Hirschfeld* v. *Williamson,* 18 Nev. 66 (1 Pac. 201); *Turner* v.

*Hardin,* 80 Iowa, 691 (45 N. W. 758).   It is contended here that as the question put to Wilkinson touching what he said to Brown at Watson and Luhrs' planing mill called for evidence which was incompetent to impeach the plaintiff's title, it could not form the basis even for the impeachment of the witness, and that defendant was bound by his answer.   This is stating the rule too broadly, although there is some authority for the contention.   When some matter that is immaterial or wholly irrelevant to the issue is elicited from the witness, it concludes the party examining him, and his credibility cannot be impeached by showing that he has at other times made contradictory statements touching the same matter.   We do not understand the rule to extend to matter that is incompetent merely because it is so, unless it may be said at the same time to be immaterial or irrelevant.   Testimony may be incompetent because from its nature parties ought not to be bound by it, yet, if it was admissible, it would not be wholly irrelevant, for it would tend to establish some fact or facts under the issues.   Immaterial and irrelevant testimony establishes nothing pertaining to the issue: *Foot* v. *Hunkins,* 98 Mass. 525, 526.   "It is not irrelevant to inquire of the witness whether he has not on some former occasion given a different account of the matter of fact to which he has already testified, in order to lay a foundation for impeaching his testimony": 1 Greenleaf on Evidence, § 449.   Now the matter of fact about which Wilkinson had given an account in his examination in chief was the alleged sale to plaintiff.   He stated the terms as he understood them, and related the attending circumstances.   On cross-examination he is asked if he had not subsequently made contradictory statements to Brown touching the same transaction.   The contradictory statement called for was incompetent to impeach plaintiff's title, because made subsequent to a transfer of the wit-

ness' interest and surrender of possession, but it was not irrelevant to the issue, and if he has made contradictory statements touching the relevant matter about which he has testified it is well calculated to affect his credibility, and has an important bearing upon the establishment of a material fact in the case. The question so repeated to Brown was legally appropriate, and the court properly allowed him to answer it.

3. The court should, however, have instructed the jury that the testimony was only pertinent to impeach the credibility of witness Wilkinson, and should be considered by them for that purpose only: *Trapnell* v. *Conklyn,* 37 W. Va. 242 (16 S. E. 570, 38 Am. St. Rep. 30); *Winchester Manufacturing Company* v. *Creary,* 116 U. S. 166 (6 Sup. Ct. 369); *Turner* v. *Hardin,* 80 Iowa, 691 (45 N. W. 758); *State* v. *Fitzhugh,* 2 Or. 234.

4. When the impeaching witness has answered the question put for the purpose of contradicting the witness whose credibility is in the balance, that is the end of his examination upon the subject, and it is inadmissible to allow the examination to proceed further, to the end that other statements, whether contradictory or not, may be elicited: Underhill on Evidence, 509; *Pence* v. *Waugh,* 135 Ind. 143 (34 N. E. 860). The subsequent questions herein noted as put to the witness Brown and his answers thereto were, therefore, incompetent, and ought not to have been admitted, and likewise other questions and answers of the same nature.

5. The same observation will apply to the like character of testimony elicited from the witnesses Park and Carter. The conversation which Park relates that he had with Wilkinson took place within twelve feet of the plaintiff, but around the corner of a vault, and out of his sight, and Park could not swear that he did or could have heard the conversation. Plaintiff could not

be bound by Wilkinson's admissions, unless it was shown that he heard them, and had an opportunity of correcting any statement inconsistent with the facts as they existed.

6. The complaint alleges the value of the property sued for to be five thousand dollars, and the answer admits it. On the trial testimony was offered by defendant, and admitted over the objections of plaintiff, showing the value of the stock of jewelry contained in the store about the time of or subsequent to the commencement of this action to be from seven to ten thousand dollars, and this is assigned as error. The bill of exceptions shows that "The testimony of the witnesses on part of plaintiff tended to prove that on the sixth day of March, eighteen hundred and ninety-three, plaintiff, D. E. Josephi, purchased of William Wilkinson a stock of jewelry then being contained in what is known as the Wilkinson Jewelry Store in the city of Pendleton, Umatilla County, Oregon, and tending to prove that the consideration for such purchase was four thousand five hundred dollars; that in said purchase and covered by the same consideration was a tract of land located in Union County, Oregon, valued at one hundred dollars, and the accounts and notes connected with said jewelry business, of the face value of one thousand five hundred dollars, but really of nominal value, and tending to prove that said four thousand five hundred dollars was a reasonable value for the property purchased." We think this evidence was admissible, if for no other purpose, to rebut the testimony of plaintiff as to the reasonable value of the property at the time of the sale, and the court committed no error in allowing it to go to the jury. The further and separate defense setting up that the sale was pretended only, and in fraud of the creditors, when construed as a whole and in the light of all the allegations

therein contained, is deemed sufficient, especially as it is not tested by demurrer or motion.    In view of the foregoing considerations the judgment must be reversed, the cause remanded, and a new trial ordered.

REVERSED.

Decided at PENDLETON, July 20, 1895.