Argued December 9, 1908, decided January 19, rehearing denied March 16, 1909.

## STATE *v.* DUNN.

[99 Pac. 278; 100 Pac. 258.]

STATUTES—CONSTRUCTION—PENAL STATUTES.

1. Under the express requirements of Section 2192, B. & C. Comp., penal statutes will not be construed strictly, but according to the fair import of their terms.

STATUTES—CONSTRUCTION—REMEDIAL STATUTES.

2. That part of the juvenile act relating to preferring charges against delinquent children and bringing them before the court, is remedial and not criminal or penal in its nature, its purpose being to place the State in the

position of guardian to the child, and it should be more liberally construed than criminal statutes.

INFANTS—PROTECTION—STATUTES—CONSTRUCTION.

3. That part of the juvenile act making it a misdemeanor for adults to contribute to the "delinquency" of a child, as that condition is defined by statute, is criminal in its nature, and should be construed as a criminal statute, by giving its terms a fair import so as to promote justice.

INFANTS—JUVENILE DELINQUENTS.

4. Delinquency, as applied to infants committing certain acts designated by statute, was unknown to common law.

INFANTS—PROSECUTIONS UNDER DELINQUENCY LAWS—SUFFICIENCY OF INFORMATION—"DELINQUENT CHILD."

5. Laws 1907, p. 121, § 1, provides that, where a child shall be a delinquent child as defined by statute, any person responsible for its delinquency, or who does any act which tends to cause it to become delinquent, is guilty of a misdemeanor; and Laws 1907, p. 40, c. 34, § 1, defines a delinquent child as one under eighteen years of age who violates any law, is incorrigible, associates with criminals, frequents a bawdy house, etc. An information charged that accused removed the clothes of an infant female and tried to induce her to have sexual intercourse by arousing her passions, etc., and alleged that the acts tended to lead such child to become a delinquent. *Held*, that the statute was intended to cover such misconduct by adults as was not otherwise made a crime by statute, so that it was unnecessary to allege that the child had in fact become a delinquent, and the information sufficiently charged acts tending to induce a child to become a delinquent.

CRIMINAL LAW—EVIDENCE—HEARSAY.

6. In a prosecution for conduct tending to lead a child to become a delinquent, evidence by the child's sister as to accused's conduct, of which she knew only from statements made to her by the child, was inadmissible as hearsay.

CRIMINAL LAW—APPEAL—OBJECTIONS—ADMISSION OF EVIDENCE—HEARSAY—FAILURE TO OBJECT.

7. Where no objection was made to the introduction of heasay evidence in a criminal prosecution, and no motion was made to take it from the jury, and no instruction asked regarding it, it became a matter for the jury, and error cannot be predicated on its admission.

CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—OTHER OFFENSES.

8. In a prosecution for acts tending to induce a child to become delinquent, it was error for a witness, called in rebuttal of accused's witness, to testify that the latter had stated that she was being treated by accused for abortion, as the statute, though not recognizing the crime by name, in effect makes the same acts a crime, and the jury must have understood by the evidence that accused had committed the statutory crime.

WITNESSES—CONTRADICTION—MATTERS AS TO WHICH WITNESS MAY BE CONTRADICTED.

9. In a prosecution for conduct tending to induce a child to become delinquent while professing to give her medical treatment, in which a witness for the defense denied on cross-examination that accused had performed an abortion on her, or that she had so stated, evidence that the witness had so stated, was inadmissible as contradicting the witness on merely a collateral matter.

INFANTS—PROSECUTION UNDER JUVENILE LAWS—SUFFICIENCY OF EVIDENCE.

10. In a posecution for conduct tending to induce a child to become a delinquent, evidence *held* insufficient, without the child's testimony, to sustain a conviction.

CRIMINAL LAW—APPEAL—HARMLESS ERROR—PREJUDICIAL EFFECT.

11. Where, in a prosecution for conduct tending to induce a child to become a delinquent, the evidence, without the child's testimony, was insufficient to convict, and her testimony was contradicted by accused and strongly disputed by another witness, the admission of incompetent evidence that the latter witness had admitted that accused performed an abortion on her was prejudicial error.

WITNESSES—CROSS-EXAMINATION—STATEMENTS REGARDING IRRELEVANT MATTERS.

12. Where a witness is examined as to statements that are irrelevant to the issues, the cross-examining party is concluded by the witness' answers, and it is error to permit him to prove contradictory statements, under the rule that a witness not a party to the record cannot be impeached by showing that he has made contradictory statements concerning immaterial and irrelevant matters.

EVIDENCE—IRRELEVANCY—APPLICABILITY TO ISSUES.

13. Evidence offered must correspond with the allegations, and be confined to the points in issue, and, except in rare instances, all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact, or matters in dispute, must be excluded.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

The defendant, J. D. Dunn, was tried and convicted of having contributed to the delinquency of a minor child. From a judgment sentencing him to serve a term in the county jail and to pay a fine, he appeals.    REVERSED.

For appellant there was a brief over the names of *Mr. Edward B. Watson* and *Mr. M. B. Keefer,* with an oral argument by *Mr. Watson.*

For the State there was a brief over the names of *Mr. Andrew M. Crawford,* Attorney-General, *Mr. George J. Cameron,* District Attorney, and *Mr. Thad. W. Vreeland,* Deputy District Attorney, with an oral argument by *Mr. Vreeland.*

Opinion by MR. COMMISSIONER KING.

Defendant was tried and convicted on an information charging him with having contributed to the delinquency of a minor child.  From a judgment sentencing him to

a term in the county jail and to pay a fine, he appeals. The facts upon which the conviction was had sufficiently appear in the information, the charging part of which is as follows:

"J. D. Dunn on the 7th day of January, A. D. 1908, in the county of Multnomah and State of Oregon, then and there being, did then and there willfully and unlawfully, by persuasion endeavor to induce one Hallie Williams, a female child under the age of 18 years, to-wit: of the age of 14 years, to do and perform an act and follow a course of conduct which would cause said Hallie Williams to become a delinquent child, and commit an act which manifestly tended to cause said Hallie Williams to become a delinquent child, in a way and manner as follows, to-wit: That the said J. D. Dunn, in said county and State, did then and there willfully and unlawfully, by talk and conversation, endeavor to induce the said Hallie Williams to have sexual intercourse with him, the said J. D. Dunn, and did willfully and unlawfully remove the clothing from her, the said Hallie Williams, and expose her person and solicit her to have sexual intercourse with him, the said J. D. Dunn, and did take and place the hand of her, the said Hallie Williams, upon the private parts of him, the said J. D. Dunn, and by such acts and by such talk, persuasion, and endeavor to induce her, the said Hallie Williams, to follow a course of conduct which would cause her, the said Hallie Williams, to become a delinquent child, and which acts did manifestly tend to cause the said Hallie Williams to become a delinquent child, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

1. The first error assigned relates to the sufficiency of the facts charged in the information to constitute a crime. The section under which this action is prosecuted reads:

"Section 1. In all cases where a child shall be a delinquent child as defined by any statute of this State, any person responsible for, or by any act encouraging, causing, or contributing to the delinquency of such child, or any person who shall by threats, command, or persuasion, endeavor to induce any child to do or perform

any act or follow any course of conduct which would cause such child to become a delinquent child, or any person who shall do any act which manifestly tends to cause any child to become a delinquent child, shall be guilty of a misdemeanor, and upon trial and conviction thereof shall be. punished by a fine of not more than one thousand ($1,000) dollars, or by imprisonment in the. county jail for a period not exceeding one year, or by both such fine and imprisonment." Laws 1907, p. 121.

It is urged on behalf of defendant that the juvenile act, under which defendant is convicted, is a criminal statute, and must be strictly construed, in support of which our attention is directed to *Horner* v. *State,* 1 Or. 268. While the holding in that case appears to be in harmony with defendant's theory on this point, it merely states the rule at common law upon the subject, which at that time (1859) had not been modified by statute. This rule, however, was subsequently modified by the adoption of Section 2192 of the Code (B. & C. Comp.), as follows:

"The rule of the common law that penal statutes are to be strictly construed has no application to this Code, but all its provisions are to be construed according to the fair import of their terms, with a view to effect its object and to promote justice."

It accordingly follows that, in this State, penal statutes must be interpreted, not according to the strict letter thereof, but in conformity with a fair import of their terms. *State* v. *Brown,* 7 Or. 186, 209; *State* v. *Turner,* 34 Or. 173, 181 (52 Pac. 92: 56 Pac. 645).

2. The State insists that the juvenile acts are remedial only, and should accordingly receive a much broader and more liberal construction than usually applied in the interpretation of criminal statutes. So far as applicable under the act to charges preferred against a minor child, this position is tenable, for only by this method could the guardianship of the State there intended for the protection of the child be made effective; but the provisions governing the juvenile court, where children are

brought before it, are clearly not intended to come within what is termed "criminal procedure," nor are the acts therein alluded to, as applied to children, crimes. *Mill* v. *Brown,* 31 Utah, 473, 480-482 (88 Pac. 609: 120 Am. St. Rep. 935).

3. But, as held in *Mill* v. *Brown,* when the charge is made against an adult, having for its purpose a conviction for having contributed to the child's delinquency, or for having persuaded such child to do any act that would manifestly tend to make it a delinquent or dependent, a different question arises; and in such a case the reasons for holding, as regards children, that it is not a criminal statute, are wanting. The purpose of the statute is to place the State, with reference to the child, in the position of a guardian, with a view to saving it from becoming a criminal by providing it with proper environments, as well as to make him a law-abiding and useful citizen, thereby requiring the constraint, control, and protection provided for in the act. But, in so far as applied to an adult who may contribute his efforts towards making such guardianship on the part of the State essential, and towards tending to impede, as well as in many instances to undo, everything done for such child, the statute is clearly intended to make such acts a crime, which necessarily requires the same procedure in the trial thereof as in the trial of any other case of a criminal nature. It follows that, while the strict construction of the common law cannot be adhered to without disregarding Section 2192 of the Code (B. & C. Comp.), we are, in the interpretation of the juvenile law, limited to what its terms will only fairly import, with a view to effect its object and to promote justice. Measured by this rule, will the acts complained of, if true, tend towards the delinquency of the minor as charged?

4. "Delinquency" was unknown to the common law, for which reason we must look exclusively to the statute for

the definition of this offense.  *State* v. *Nease*, 46 Or. 433 (80 Pac. 897).

5. A delinquent child is defined by the session laws (Laws 1907, p. 40, chap. 34, § 1), as:

"Any child under the age of eighteen (18) years who violates any law of this State or any city or village ordinance, or who is incorrigible, or who is a persistent truant from school, or who associates with criminals or reputed criminals, or vicious or immoral persons, or who is growing up in idleness or crime, or who frequents, visits, or is found in any disorderly house, bawdy house or house of ill fame, or any house or place where fornication is enacted, or in any saloon, barroom or drinking shop or place, or any place where spirituous liquors, or wine, or intoxicating or malt liquors are sold at retail, exchanged or given away, or who patronizes, frequents, visits or is found in any gaming house, or in any place where any gaming device is or shall be operated."

It is not charged that the alleged mistreated child has become delinquent, within the meaning of the statute, but averred merly that the acts complained of manifestly tend toward such delinquency.  It is not essential to a conviction either to charge or to prove that the minor has become delinquent.  The general purpose of the law on the subject, as applied to improper acts of adults, is intended more particularly to cover instances of misconduct by adults, not otherwise provided for by statute.  To assume that it was intended that the· State should await the result of the wrong perpetrated before punishing the offender, would, therefore, be unreasonable, as well as strongly tend to defeat the very purpose of the law in its effect to protect children.  That it was not so intended is made clear by the act itself, in which it is, in effect, provided that a misdemeanor shall be sufficiently established if it shall appear that the act charged "manifestly tends to cause any child to become a delinquent child."  It needs no discussion to show that, if the accusations against the defendant are true, the effect of the alleged wrongful acts would manifestly tend to cause a

girl of immature years to become a delinquent, as defined by the juvenile acts. The information is therefore sufficient.

6. The next error assigned relates to the sufficiency of the proof to constitute a crime, in respect to which it is urged that the evidence offered is inadequate to support the verdict. It appears from the bill of exceptions that the defendant, although not a licensed physician, was in the habit of giving what are termed "electrical treatments," by applying to the body of the patient vibrators and like apparatus, run by electric power; that he kept an office open for that purpose; and that the prosecuting witness, Hallie Williams, was one of his patients. It was during the course of one of his treatments that the acts complained of are charged to have taken place. It appears that several treatments had been given her by defendant, during the course of which it was deemed necessary to remove a part of her clothing, but not to the extent alleged to have been indulged in at the time the acts complained of are charged to have been committed. Hallie Williams testified to the improper proposals specified, and to facts tending to show, if true, that his treatments were highly improper, and, as stated by physicians testifying in the case, were not only unnecessary, but such as were calculated to arouse her passions. The witness also mentioned that defendant took hold of her hand, but gave no further explanation regarding that particular incident. The improper use of her hand, in the manner charged, as well as some of the other facts tending to defendant's prejudice, was attempted to be established as a fact only by the testimony of Mrs. Loomis, a sister of the complaining witness, with whom she was making her home; and her narrative went to only what Hallie Williams had told her.

7. The testimony of Mrs. Loomis thus offered and permitted was clearly hearsay; but while in fact hearsay,

and for that reason not entitled to admission, neither was any objection made to its introduction, any motion made to take it from the jury, nor were any instructions asked in reference thereto, and since there was competent testimony adduced on other material issues, in the absence of some proper objection or other steps taken requiring its rejection, it became a matter for the jury, and error cannot be predicated thereon. *State* v. *Foot You,* 24 Or. 61, 67 (32 Pac. 1031: 33 Pac. 537) ; *State* v. *Croney,* 31 Wash. 122 (71 Pac. 783).

8. The next and last error relied upon relates to the admission of testimony in rebuttal. A Mrs. Kruse was called as a witness for defendant, and gave evidence to the effect that, at the time of the treatment of Miss Williams by defendant, she was present in an adjoining room, with an open doorway between that room and the one in which the treatment was being administered, and that she could and did see and hear all that took place during the treatment complained of, and that none of the improper acts or improper proposals charged took place. On direct examination she was interrogated as to whether defendant ever treated her. To this she replied in the affirmative, whereupon she was further asked by the State's attorney, and without objection testified:

"Q. Did Dr. Dunn ever examine, and as a matter of fact did he not perform an abortion upon you? Was not an abortion performed?

"A. No, sir.

"Q. Did you ever tell any one that Dr. Dunn did perform an abortion in your house?

"A. No, sir."

Mrs. Loomis was then recalled by the State in rebuttal, and, *inter alia,* testified:

"Q. Mrs. Loomis, referring back to the testimony, do you remember when Mrs. Kruse testified?

"A. I do.

"Q. I will ask you if you know about the occurrence, and when she was being treated by Dr. Dunn?

"A. I was down there and took care of her.

"Q. Did you have any talk with her about what she was being treated for? (Objected to as leading, incompetent, irrelevant, and hearsay. Overruled, and exception allowed).

"Q. What did she tell you about that? (Same objection, ruling, and exception.)

"A. She said she was being treated for an abortion.

"Q. Did she tell you how long she had been pregnant at that time? (Same objection, ruling, and exception.)

"A. She told me two months, and afterwards said it was three."

"It is undoubtedly true," says Mr. Justice WOLVERTON, in *Josephi* v. *Furnish,* 27 Or. 260, 264 (41 Pac. 424, 425), "that a witness, not a party to the record, cannot be impeached by showing that he has made contradictory statements concerning matters immaterial or irrelevant to the issues in the case." The evidence sought by this line of inquiry could have no bearing whatever upon the question as to whether the defendant committed acts manifestly contributing to the delinquency of the child as charged. It needs no discussion to show that when, in response to the question asked her on cross-examination as to what she may have told Mrs. Loomis, the reply was in the negative, after which the witness, being called on rebuttal, testified to the truthfulness thereof, the statements thus elicited not only brought to the attention of the jury the charge against this witness which tended to show her guilty of an immoral act, but that defendant had participated in what on his part was an unlawful and criminal act.

9. While the crime of "abortion" is unknown to our statute (*Belt* v. *Spaulding,* 17 Or. 130, 137: 20 Pac. 827), the statute provides:

"If any person shall administer to any woman pregnant with a child any medicine, drug, or substance whatever, or shall use or employ any instrument or other means, with intent thereby to destroy such child, unless the same shall be necessary to preserve the life of such mother, such person shall, in case the death of such child

or mother be thereby produced, be deemed guilty of manslaughter." Section 1748, B. & C. Comp.

Now, whether as a matter of law a crime technically known by the above term is recognized or not, the testimony of the witness to the effect that Mrs. Kruse admitted having committed an abortion two or three months after conception could not have been misunderstood by the jury. These facts unexplained would naturally lead the average person to believe it was of the character intended should come within the above section of the Code. Presumably neither the witness nor defendant came prepared to refute charges not contained in the information.

10. To recognize a rule that would permit an inquiry into collateral offenses, or into every offense, whether statutory or in contravention to some well-recognized moral law, with which an accused or his witness may be suspected, would be a very dangerous precedent, and one which would not only in many instances enable the guilty to escape punishment, but result in conviction of persons charged with crimes of which they might be perfectly innocent. Since sufficient evidence was properly admitted to entitle the case to go to the jury, it is not for us to say whether the accused was guilty or not; but without the testimony of the prosecuting witness, the evidence would have been insufficient to sustain the charge. Her testimony was contradicted by the defendant, as well as strongly disputed in many details by Mrs. Kruse.

11. To admit, therefore, testimony purporting to show an admission by her to the effect that she had committed the acts mentioned, and at the same time such as would tend to persuade the jury that the accused committed a felony concerning a matter in no way connected with the misdemeanor for which he was on trial, was not only irrelevant and hearsay, but so manifestly prejudicial as to make a reversal of the judgment of the lower court and a granting of a new trial necessary.

REVERSED.

Decided March 16, 1909.

ON PETITON FOR REHEARING.

[100 Pac. 258.]

MR. JUSTICE KING delivered the opinion of the court.

12. The main contention of counsel for the State in their petition for rehearing is that no error was committed on cross-examination of Mrs. Kruse, a witness for the defendant. But the error for which judgment of the court below was reversed was in permitting, over the defendant's objection, proof of statements purporting to have been previously made by Mrs. Kruse contradictory to the answers elicited on cross-examination, and our reference to the law relating to abortion was merely to show that, whether the statute includes this violation of the moral law in its category of crimes or not, the effect upon the jury, under the variant statements testified to by Mrs. Loomis, would be the same, and could but result in prejudicing defendant's right, making a reversal necessary. In support of its position the State insists that an unecessary abortion is not a crime, under Section 1748, B. & C. Comp., unless it results in the death of the mother, or of a quick fœtus, and authorities are cited in support thereof. Bishop, Stat. Crimes (3 ed.), § 745; Wharton, Homicide (3 ed.), § 375; *Evans v. People*, 49 N. Y. 86; *State v. Cooper*, 22 N. J. Law, 52 (51 Am. Dec. 248); *Commonwealth v. Parker*, 9 Metc. (Mass.) 263 (43 Am. Dec. 396); *Smith v. State*, 33 Me. 48 (54 Am. Dec. 607); *Wells v. New England M. L. Ins. Co.*, 191 Pa. 207 (43 Atl. 126: 53 L. R. A. 327: 71 Am. St. Rep. 763). But why this position is so earnestly pressed is not clear; for only in the event such acts constitute a crime could it properly be held, if at all, that *State v. Bacon*, 13 Or. 145 (9 Pac. 393: 57 Am. Rep. 8), presented as an authority in justification of the inquiry for which the judgment was reversed, is in point. Whether the interpretation invoked by the

plaintiff of section 1748 of the statute is correct is not essential to a decision of the point under consideration, nor are we disposed to pass upon a question of such importance until necessary to do so. If the point is urged on the theory that the facts elicited could not have been prejudicial unless sufficient, under the statute, to constitute a crime, still the position thus assumed is untenable; for, as formerly explained, the testimony of Mrs. Loomis in reference to the matter was such as would ordinarily lead the jury to believe this section of the statute had been violated, the influence of which, presumably, had the same effect upon the jury as if the charges were in law conceded to be a crime. The defendant was on trial charged with having contributed to the delinquency of Hallie Williams, and not for having committed an abortion upon, or of having improperly treated, Mrs. Kruse. True, the statement of witness that defendant had "treated" her at one time was brought out on her direct examination, but this was a collateral matter, having no bearing on the issues involved. Mrs. Kruse was in no sense a party to the record, and the testimony sought with reference to her clearly comes within the rule that:

"Where a witness is examined as to statements that are irrelevant to the issues, the cross-examining party is concluded by his answers, and it is error to permit him to prove such variant statements. * * Nor does the fact that a witness has testified to facts that are collateral or irrelevant to the issues in the case avoid such necessity, nor render it proper to elicit or prove statements of the witness that are relevant to and variant from the facts to which he has so testified, but which are collateral or irrelevant to the issues in the cause; and where such collateral matters are elicited from a witness the parties are concluded by his testimony in respect thereto, and cannot contradict it by proof of variant statements." 7 Enc. Evidence, 81, 82.

13. We did not hold that an error was committed merely because the State was permitted to go into these

matters on cross-examination. The cause was decided
on the assumption that the court did not abuse its dis-
cretion in permitting this line of inquiry on cross-
examination; but as to the right, after the witness had
answered the cross-interrogatories, of counsel further to
proceed in introducing the testimony, discussed in the
opinion which followed, we merely applied the above rule,
together with that announced by Mr. Justice WOLVERTON
in *Josephi* v. *Furnish*, 27 Or. 264 (41 Pac. 425), namely:
"A witness, not a party to the record, cannot be
impeached by showing that he has made contradictory
statements concerning matters immaterial or irrelevant
to the issues in the case." It can make no difference
whether the testimony sought to be impeached may be
treated as the evidence of the party calling the witness,
for the same reasons exist for the exclusion of the testi-
mony as to the variant statements. It is not insisted that
it was material or relevant to any of the issues upon
which defendant was on trial that improperly, or in
violation of any moral or statutory law, the defendant
may have committed an abortion upon the witness, bring-
ing the objection to this line of inquiry clearly within
the above rule.

In *Josephi* v. *Furnish* it was maintained that an assign-
ment by Wilkinson was made for the benefit of his
creditors. Plaintiff therein purchased of Wilkinson the
property affected by the assignment, and one H. L. Has-
brouck was placed in charge and remained in control
for a short time, when Wilkinson was restored to posses-
sion. Wilkinson, being called as a witness for plaintiff,
testified to the circumstances attending the sale, tending
to show that it was made in good faith and for an ade-
quate consideration. After the testimony to the above
effect was given, Wilkinson, for the purpose of showing
the relations existing between them, and of testing his
credibility as a witness, was asked on cross-examination
whether, on the date of the sale, he told W. M. Brown

that he had Josephi come there, and had given him a bill of sale in order to stop a blackmailing suit, etc., and that he only put the property out of his hands for that purpose, etc., to which the witness answered in the negative. Brown was then called, and testified that such statements were made. The admission of proof of the contradictory statements was held prejudicial, and for the reasons stated in the above excerpt from the opinion the cause was reversed. This case is clearly in point, and we think decisive of the question here presented. *Capital Lumbering Co.* v. *Learned,* 36 Or. 551 (59 Pac. 454: 78 Am. St. Rep. 792) is cited as supporting plaintiff's position, but the admission there evoked was held to be cumulative only; hence is not applicable here. In the case cited of *Smitson* v. *S. P. Co.,* 37 Or. 88 (60 Pac. 907) the testimony sought by the inquiry was held to be material to the issues involved, and in *State* v. *Ellsworth,* 30 Or. 145 (47 Pac. 199) the questions only related to the manner of laying the foundation for impeachment, and as to what may be asked on cross-examination of a witness. These cases, like the others cited from this court, are not in point. Authorities are also cited from other states, but it is unnecessary to consider them, as we will be governed by the rule recognized by the highest courts within the jurisdiction in which the cause was tried. It is elementary that as a general proposition evidence offered must correspond with the allegations, and be confined to the points in issue, and equally as well settled that, except in rare instances, all evidence of collateral facts, or those which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute, should be excluded. Such evidence tends to detract the attention of the jurors to extrinsic matters, and to excite prejudice and mislead them. If some limitations were not placed upon inquiries of this character, it could but result, in many cases, in the jury losing sight of the

merits of the controversy, and no method could well be adopted whereby the end of such inquiries could be determined. Other reasons may be given, and many authorities cited, as to why this course should not be allowed; but the rule announced in *Josephi* v. *Furnish,* is so clearly decisive of the question before us that we deem further elucidation thereof unnecessary.

The petition is denied.

REVERSED: REHEARING DENIED.