[Crim. No. 1955. In Bank.—June 8, 1916.]

## THE PEOPLE, Respondent, v. FRANK BERGOTINI, Appellant.

JUVENILE COURT LAW—CONTRIBUTING TO DELINQUENCY OF MINORS—IN-
SUFFICIENCY OF INFORMATION—FAILURE TO STATE OFFENSE.—In a
prosecution for contributing to the delinquency of minors, where the
information in substance charges that the father of the minors was a
drunkard who frequently went home in an intoxicated state and was
seen by his children in that condition; that the defendant induced
the mother of the children to have improper sexual relations with
him and to finally leave her home and live with him in an adulterous
relation, and that the children, lacking parental control, are there-
fore in danger of growing up to lead idle, dissolute, and immoral
lives, and that at all the times mentioned in the information the
home of the mother was, by reason of her personal depravity, an
unfit place for the children, but there is no distinct allegation that
the acts of the defendant and the mother were committed in the
presence of the children, or that they had any direct effect upon the
morals of the minors, or that the defendant contributed to the
delinquency of the children, or how his evil influence operated upon
them, the information fails to state a public offense under the
juvenile court law, and a demurrer thereto should have been sus-
tained.

ID.—PLEADING—CLEAR STATEMENT OF OFFENSE REQUIRED.—A defend-
ant is entitled, under any statute, to a clear statement of the offense
with which he is charged.

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order denying a new trial. Emmet Seawell, Judge.

The facts are stated in the opinion of the court.

E. J. Dole, for Appellant.

U. S. Webb, Attorney-General, for Respondent.

MELVIN, J.—Defendant appeals from a judgment of conviction and from an order denying his motion for a new trial. The offense sought to be charged in the information was contributing to the dependency of certain minors.

The charging part of the information was as follows:

"The said Frank Bergotini on or about the 4th day of July, A. D. One Thousand Nine Hundred and fourteen and for eight months next prior thereto, at and in the County of Sonoma, State of California, did willfully and unlawfully contribute to the dependency of dependent children as follows: That at all times herein mentioned and now, Doris Cavalli, Ellen Cavalli, Virginia Cavalli and Alice Cavalli were minor children all under the age of eleven years and the children of A. Cavalli and Irene Cavalli, their parents, and at all times herein mentioned said children were dependent children and their home at Petaluma in said County of Sonoma, State of California, was during said time by reason of the neglect and depravity of Irene Cavalli, the mother of said children, and by reason of the personal depravity of their said mother, an unfit home for said children and that the said children are and at all times herein mentioned have been in danger of growing up to lead idle, dissolute and immoral lives. That A. Cavalli is and during all of the times herein mentioned has been in the habit of drinking intoxicating liquors to excess, often going to his home in an intoxicated condition, and being and remaining in an intoxicated condition in the presence of his said children in his said home. That on or about the 15th day of November, 1913, the said Irene Cavalli began living and having immoral relations with one Frank Bergotini, and ever since has continued to sustain and live in immoral relations towards said Frank Bergotini and thereby neglected

and abandoned said children and said home. Said Irene Cavalli was during all of said time, encouraged and induced to neglect and abandon said children and said home and to live in immoral and depraved relations with said Frank Bergotini with the consent, request and approval of the said Frank Bergotini and that on or about the 23rd day of February, 1914, in the County of Sonoma, the said Irene Cavalli at the request and encouragement of said Frank Bergotini, deserted and abandoned her said children as aforesaid and has since continued to desert and abandon and neglect said children and leave them without a proper or fit home and to lead an immoral life with said Frank Bergotini and that by reason of the acts of the said defendant as aforesaid, and by reason of the neglect, desertion and abandonment of the said children as aforesaid, by Irene Cavalli, the mother of said children, which said neglect, desertion and abandonment has been encouraged, abetted and contributed to by said defendant as aforesaid, and by reason of the habitual intemperance of A. Cavalli, the father of said children, said children have no parent or guardian willing and capable, or willing or capable of exercising proper parental control of said children, and for want of such proper parental control, said children are wayward and addicted to vicious habits and are in danger of being brought up to lead idle, dissolute and immoral lives. . . .''

The defendant's counsel duly demurred to this information on numerous grounds. The demurrer should have been sustained, for reasons which we shall presently discuss.

Section 28 of the juvenile court laws (Stats. 1913, p. 1303), contains the following language:

''Any person who shall commit any act or omit the performance of any duty, which act or omission causes or tends to cause, encourage or contribute to the dependency or delinquency of any person under the age of twenty-one years, as defined by any law of this state, . . . shall be guilty of a misdemeanor. . . . ''

Section 3 of the same act defines the condition of a dependent person. For the purposes of this case we need only consider the first and eighth subdivisions of that section, which provide that a ''dependent person'' shall include any person '' (1) who has no parent or guardian willing to exercise, or capable of exercising proper parental control, and

for the want of such proper parental control such person is wayward and addicted to vicious habits, and is in danger of being brought up to lead an idle and dissolute, or immoral life''; ''(8) who from any cause of personal depravity is in danger of growing up to lead an idle and dissolute, or immoral life.''

The information does not set forth the acts of immorality committed by Bergotini and Mrs. Cavalli, but assuming that they were adulterous acts, there is no pleading to the effect that such acts were committed in the presence of the children or that they had any direct effect upon the morals of the minors. Stripped of details, the story of the pleading seems to be this: Cavalli was a drunkard who frequently went home in an intoxicated state and was seen by his children in that condition. Bergotini induced the mother of the children to have improper sexual relations with him and finally to leave her home and to live with him in an adulterous relation. The children, lacking parental control, are therefore in danger of growing up to lead idle and dissolute or immoral lives. But the pleader also alleged that at all times mentioned in the information, that is, between November 13, 1913, and July 4, 1914, the home of Irene Cavalli was, by reason of her personal depravity, an unfit place for the children. It is clear, therefore, that Bergotini is not charged with any offense operating directly upon the children. The prosecuting officer sought to charge him with crime because of a condition created by reason of his immoral relations with the mother. It is impossible to tell from the pleading whether his fault lay in causing her to violate her marriage vows and thus to become an unfit person to associate with her children while she remained at home or in persuading her to leave home, or both. A defendant is entitled, under any statute, to a clear statement of the offense with which he is charged. It is urged that the statute itself is unconstitutional, because it is not in its terms sufficiently certain to show what the legislators intended to prohibit and punish. (12 Cyc. 141.) The act constituting an offense should be clearly described in the statute with sufficient certainty to enable the court to determine, from the words used, whether or not the act charged comes within the prohibition of the law. (*State* v. *Mann*, 2 Or. 238, 241.) But it is not necessary here to pass upon the constitutional

question raised by appellant. Assuming that the act is
constitutional, the information does not allege distinctly
how the defendant contributed to the delinquency of the
children. If his relations with their mother before she de-
serted them caused her to become so immoral that she
influenced them to be depraved, there is no sufficient alle-
gation to that effect. It is not stated how his evil influence
operated upon them. If the information is to rest upon the
theory that taking her to live with him deprived the chil-
dren of a fit and proper home, that is negatived by the
previous allegations that the home was unfit and improper
for them before her departure, and even if such averments
were lacking, there is no pleading that she could have pro-
vided a proper home for them if his malign influence had
not operated upon her affections. If the taking of the
woman away from the home is the gist of the offense, then
the immorality of the inducement is not material, and an
employer who, knowing that she had young children and
a drunken husband, induced her to accept a position in a
place away from home, would be just as guilty as her para-
mour. We cannot so construe the act. The statute must
have contemplated some offense having not merely a possi-
ble, but an inevitable, effect upon the minor.

The prosecution apparently placed strong reliance upon
the case of *State* v. *Dunn,* 53 Or. 304, [99 Pac. 278, 100 Pac.
258], in which the court held that it was unnecessary to
charge or prove that the minor was in fact dependent. But
even if we assume that the doctrine announced by the
supreme court of Oregon in the decision of that case is cor-
rect, the facts were so different that it is not authority which
aids in the determination of the questions presented by this
appeal. The act charged in the information in that case
operated directly upon the minor. It was an attempt on
the part of the defendant to seduce the minor child. If suc-
cessful it would have made her a "delinquent," and mani-
festly the very attempt to seduce her tended to make her a
member of that class.

If this information were to be upheld it would be impossible
to foresee what application juries might make of this law to
persons having some remote possible connection with the
delinquency or dependency of minors. The dealers who
sold Cavalli liquor, the manufacturers who may have adul-

terated the intoxicants thereby increasing the potency of the drinks, the farmers who raised the materials out of which the intoxicants were manufactured, and the builders of the machinery for the making of the liquors—all of these might be indicted as contributing in some degree to the delinquency of these minors, the conviction of the defendants depending largely upon the prejudice and the imagination of the jurors. We might add, for good measure, the truant officer who may have failed to compel the attendance of the children at school. We cannot think that the legislature intended the wide scope which the prosecution sought to give to the Juvenile Court Act.

We conclude, therefore, that the court erred in failing to sustain the demurrer.

Nevertheless, we have examined the evidence adduced at the trial. While it indicates that the children used profanity and at times exposed themselves rather shamelessly to strangers, there was no showing that their moral condition was made worse because of defendant's connection with the Cavalli family. At the time of the trial the Cavallis were separated in accordance with the terms of a written agreement giving the father full control of the children. Three of the minors were in an orphan asylum which was under church government and the youngest was with its maternal grandmother. There can be little doubt that the defendant was found guilty because of his adultery—an offense for which, as such, he was not on trial.

The judgment and order are reversed.

Henshaw, J., and Lorigan, J., concurred.

SHAW J., Concurring.—I concur on the ground last stated.

ANGELLOTTI, C. J., Concurring.—I concur in the judgment. I am of the opinion that the information fails to state a public offense within the meaning of section 28 of the so-called juvenile court law of the year 1913, the only statute relied on by the prosecution as covering the matter. It seems to me that to give this section such a construction as would support the information herein, or sustain this conviction, on the evidence introduced on the trial, would necessarily attribute to the legislature the intent thereby to

make *any* act or omission that in fact causes or tends to cause, encourage, or contribute, *however remotely,* to the dependency or delinquency of a minor, a crime.

So far as the defendant himself is concerned, the information substantially charges only that the mother of the alleged dependent children in the home of herself, her husband, and the children, sustained and lived "in immoral relations" with said defendant, with his consent, request, and approval; "and thereby neglected and abandoned said children;" and that finally, at the request and encouragement of defendant, *she* deserted and abandoned her children to live an immoral life with defendant, leaving the children without a proper or fit home. There is not the slightest suggestion that any alleged "immoral relations" were in the presence or with the knowledge of any of the children. The only suggested consequence thereof was that, by reason thereof, the *mother* "neglected and abandoned said children and said home." And as to her finally leaving the home where her husband and children remained, it is alleged simply that she did this at the request and encouragement of the defendant. In other words, all that is alleged against defendant is that, as a consequence of his relation with the *mother* of the children, *she* at first neglected them and finally, at his request and because of his encouragement, *she* left her home, with the result that *she* deserted and abandoned the children, and thereby failed in the performance of *her* duties toward them. Whatever act or omission there was directly causing or tending to cause, encourage, or contribute to the alleged dependency of the children was the act or omission of the mother alone. Defendant did nothing in their presence or elsewhere directly accomplishing any such result. Whatever he personally did began and ended with the mother, and was not directed toward any of the children.

The only possible basis of any claim of act or omission causing, tending to cause, encouraging or contributing to the alleged dependency, is solely the act or omission of the *mother* in neglecting and abandoning her children. The only connection of the defendant therewith is that *she, the mother,* may have done this in consequence of her relations with him.

I am satisfied that the statute before us may not reasonably be construed as including any such case. It is entirely fair

and permissible to construe it as referring exclusively to acts or omissions done or made directly with relation to the minor child. No case has been cited, and I have been able to find none, involving any other kind of an act or omission. For instance, one willfully commits lascivious acts in the presence of a child capable of comprehension, or toward such a child; or has immoral relations with a child; or does with relation to the child any of the very numerous things that may directly cause, tend to cause, or contribute to its dependency. Such acts or omissions are clearly within the scope of the statute. But something done solely with relation to somebody else, in no way directly affecting the child, may not fairly be held within its scope. And it can make no difference in this connection whether the thing so done is immoral, as in the case at bar, or absolutely free from blame.

I agree in the conclusion, also, that the evidence utterly failed to show a case which warrants a conviction under the statute invoked. As is said in the opinion of Mr. Justice Melvin, "there can be little doubt that the defendant was found guilty because of his adultery—an offense for which, as such, he was not on trial."

Sloss, J., concurred.

LAWLOR, J., Concurring.—I concur in the judgment upon the ground that the demurrer should have been allowed.