[Crim. No. 6376.   In Bank.   Feb. 27, 1959.]

THE PEOPLE, Appellant, v. WILLIAM G. BERNSTEIN, Respondent.

656

Edmund G. Brown, Attorney General, Clarence A. Linn, Chief Assistant Attorney General, E. Clarke Savory, District Attorney (Fresno), and George J. Roth, Deputy District Attorney, for Appellant.

Leo R. Friedman for Respondent.

CARTER, J.—This is an appeal by the People from an order dismissing an information against William G. Bernstein, who is a licensed and practicing physician and surgeon.

He was accused by information of two counts of contributing to the delinquency of certain minors (Welf. & Inst. Code, § 702), in that he, on two dates certain, wilfully, unlawfully and knowingly ''did live with Mrs. Beverly Enns as husband and wife'' in the presence of the two minor children which conduct ''caused and manifestly tended to cause and encourage . . . [the minor children] . . . to come within the provisions of Section 700 of the Welfare and Institutions Code of the State of California, to-wit: To become or remain minor

persons who are leading, or from any cause are in danger of leading idle, lewd, dissolute or immoral lives.''[*]

At the preliminary hearing the divorced husband of Mrs. Enns testified that he had seen a car, later identified as Dr. Bernstein's, near Mrs. Enns' home on the two nights specified in the information and probably a ''half dozen'' ''to eight times'' ''in the past year.'' A police officer testified that he had identified Dr. Bernstein's car as the one which was parked near Mrs. Enns' home on the night of March 4, 1958, and that Dr. Bernstein left in the car between 11 and 11:30 and that he talked ''to him for approximately 20 minutes''; that Mrs. Enns and the two children were at home at the time.

The only other witness for the People was Mrs. Enns' 8-year-old son Michael. Michael testified that he knew Dr. Bernstein; that he called him ''Doc''; that Dr. Bernstein had come to his home ''pretty often''; that he came to the house ''Sometimes . . . in the day and sometimes he comes in the night and morning''; that he could hear Dr. Bernstein come in ''and then talk to my mother, and then I don't hear them do anything else. Just talk.'' He testified that he didn't think Dr. Bernstein ever stayed all night. Michael further testified that there were two bedrooms in the house, one of which was occupied by his mother and one by his sister, aged 6, and himself.

Michael also testified that ''just once'' he had seen Dr. Bernstein on his way to take a shower one morning and that he was dressed ''in his panties, and his T-shirt and [that] his shoes [were] on''; that it was ''long ago''; that Dr. Bernstein came from his mother's bedroom; that his mother was either in the bedroom or the kitchen and that she was dressed in her pajamas and robe. He also testified that once when he had come in from play in the afternoon about 4 o'clock he had passed his mother's bedroom, the door of which was open about a foot, and that he had seen his mother and Dr. Bernstein on the bed; that they were ''just laying there''; that his mother had a headache; that he didn't know whether the lights were on or off but he thought they were on; that he had seen Dr. Bernstein in his mother's room ''quite a few times'' but only once on the bed. He also testified that once Dr. Bernstein had given his mother some money to buy Christmas toys.

After reading a transcript of the evidence and hearing oral

*The complaint against Mrs. Enns was dismissed after the information against Dr. Bernstein was set aside.

argument of counsel, the trial court granted defendant's motion to set aside the information on the ground of lack of reasonable or probable cause.

The People contend that the trial court cannot usurp the function of the committing magistrate by substituting its judgment as to the weight of the evidence as long as there is some evidence in support of the information; and that a reasonable suspicion from the evidence that a crime has been committed coupled with a reasonable suspicion that the defendant committed the crime is sufficient to hold him to answer.

■ The crime with which we are here concerned is contributing to the delinquency of a minor child; we are not concerned with the conduct of Dr. Bernstein and Mrs. Enns except insofar as the effect it might tend to have on the minor children involved. ■ The test is the reasonable effect the charged acts have upon children, not what conclusions can be drawn therefrom by adults (*People* v. *Miller*, 145 Cal.App.2d 473, 477 [302 P.2d 603]). It should also be remembered that it is the defendant's conduct in the *presence* of the children that is the gist of the action. ■ A good statement of the rule is found in the concurring opinion of Mr. Chief Justice Angellotti in *People* v. *Bergotini*, 172 Cal. 717, 723, 724 [158 P. 198], where he said: "It is entirely fair and permissible to construe it [the statute] as referring exclusively to acts or omissions done or made directly with relation to the minor child. No case has been cited, and I have been able to find none, involving any other kind of an act of omission. For instance, one willfully commits lascivious acts in the presence of a child capable of comprehension, or toward such a child; or has immoral relations with a child; or does with relation to the child any of the very numerous things that may directly cause, tend to cause, or contribute to, its dependency. Such acts or omissions are clearly within the scope of the statute. But something done solely with relation to somebody else, in no way directly affecting the child, may not fairly be held within its scope. And it can make no difference in this connection whether the thing so done is immoral, as in the case at bar, or absolutely free from blame."

■ Taking all the evidence as true together with all the inferences to be drawn therefrom, it appears as a matter of law that the only conduct committed in the presence of the 8-year-old child consisted of Dr. Bernstein's presence in the home, his being on the bed with the child's mother when the lights

were probably on, and being seen on his way to the shower dressed in his underclothing and shoes. It cannot be said that this conduct falls within the rule set forth in *People* v. *Mitchell*, 148 Cal.App.2d 733, 734 [307 P.2d 411], where it was said that "A case is made out when the evidence proves acts on the part of the defendant which tend to cause or encourage a minor to lead an . . . immoral life." ▮ In *People* v. *Deibert*, 117 Cal.App.2d 410, 419 [256 P.2d 355], it was held that an "immoral life" is not confined to sexual matters but is something that is inimical to good order, against the welfare of the general public and contrary to good morals. Even if we assume that the relationship between Dr. Bernstein and Mrs. Enns was contrary to good morals, the crime charged is whether their conduct, as committed in the presence of the children, would cause or tend to cause the children to lead idle, lewd, dissolute or immoral lives. We think it appears as a matter of law that it would not, and that the trial court was correct in setting aside the information for that reason. There is no evidence that the acts of the defendant committed in the presence of the child had any untoward effect whatsoever upon the child. And that is the crime with which we are here concerned.

▮ There is no merit to the People's argument that the trial court substituted its judgment for that of the committing magistrate. It is the duty of the trial court when, in its judgment, there is, as a matter of law, no evidence which tends to prove the offense charged in the information, to set it aside.

▮ There is no merit to the People's argument that if the information "inadequately" described the acts of Dr. Bernstein and Mrs. Enns, the trial court should have "permitted amendment" rather than dismissing the information. In this connection the People rely upon section 1009 of the Penal Code which provides in part that an amended complaint "may be filed" by the prosecuting attorney without leave of court or that the court "may order or permit an amendment" of an information. It is apparently the People's position that if the information was insufficient, it was the duty of the court to order the prosecuting attorney to amend it even though no effort was made on behalf of the People to do so. But we are not here concerned with the problem of whether the information states a public offense, but whether the evidence presented at the preliminary examination is suffi-

cient to establish probable cause that the offense charged in the information was committed by defendant. We agree with the trial judge that probable cause was not shown, and there was, therefore, no basis for the order holding the defendant to answer on which the information was based.

The order appealed from is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.