[Crim. No. 447.   Third Appellate District.—August 2, 1918.]

THE PEOPLE, Respondent, v. PETER BAKER, Appellant.

CRIMINAL LAW — SALE OF LIQUOR TO MINOR — JUVENILE COURT LAW— PENAL CODE—NO CONFLICT OF LAWS.—There is no conflict between section 21 of the juvenile court law (Stats. 1915, p. 1225), and section 397b of the Penal Code, the latter being intended to reach the specific offense of sales of intoxicating liquors to minors under the age of eighteen years, and the former being designed to protect persons under the age of twenty-one years from suffering the consequences of any act, which causes or tends to cause or encourage such persons to become addicted to the use of intoxicating liquors, or to lead idle, dissolute, or immoral lives.

ID.—ACT PUNISHABLE UNDER TWO STATUTES.—The existence of a statute punishing the sale of intoxicating liquors when the purchaser is under the age of eighteen years cannot limit or affect the operation of the juvenile court law, under which one who sells intoxicat-

ing liquor to a person under the age of twenty-one years may be prosecuted, if such conduct tends to cause the minor to lead a dis-solute and immoral life.

ID.—CONSTRUCTION OF JUVENILE COURT LAW—DISTINCTION BETWEEN ACT AND PENAL CODE.—Under section 397b of the Penal Code, in the case of the sale of intoxicating liquor to a person under the age of eighteen, the sale alone, regardless of its consequences, consti-tutes the crime, but to constitute an offense under the Juvenile Court Act, the act. must be accompanied by circumstances tending to show that it would cause the minor to lead an immoral, idle, or dissolute life.

ID.—EVIDENCE—VERDICT OF JURY JUSTIFIED.—Evidence in a prosecution under the juvenile court law examined and found to justify a verdict of guilty where the defendant had sold beer to a minor under the age of twenty-one, who was a frequenter of saloons and billiard-rooms.

ID.—INTENT OF SELLER IMMATERIAL.—The intent of the seller in such case was immaterial, since the law contemplates the effects of sell-ing and its tendency to cause the minor to become a delinquent and not the motive or intent of the seller.

ID.—OTHER SALES—PURPOSE FOR WHICH ADMISSIBLE.—Evidence of the sale of intoxicating liquors to the same minor in the same saloon at other times was properly admitted, the jury having been told that the evidence was admitted upon the theory that it might tend to prove that this minor was a person who was in danger of becom-ing an habitual drunkard, and for that purpose alone, and not for the purpose of attempting to prove the main charge, namely, the sale of two bottles of beer to the minor.

APPEAL from a judgment of the Superior Court of Hum-boldt County.  George D. Murray, Judge.

The facts are stated in the opinion of the court.

James W. Henderson, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—By information filed by the district at-torney of Humboldt County it was charged as follows: "That the said defendant Peter Baker, did then and there, to wit: in said certain saloon, barroom and place in said city of Eureka, county of Humboldt, state of California, on said 23rd day of December, 1917, willfully, knowingly and unlaw-

fully sell, furnish and give to Frank Mahan, who was then and there a minor under the age of twenty-one years, to wit: of the age of eighteen years, intoxicating liquor, to wit: beer. That said act by said defendant Peter Baker did then and there manifestly cause, tend to cause, encourage and contribute to the said Frank Mahan, then and there a minor under the age of twenty-one years, to wit: of the age of eighteen years, to become and remain a person coming within the provisions of section one of the Juvenile Court Law of the state of California, to wit: a person under the age of twenty-one years who habitually uses intoxicating liquors, and who is leading or is in danger of leading an idle, dissolute, lewd and immoral life; contrary," etc.

Tried by a jury the verdict was guilty as charged in the information and defendant was sentenced to pay a fine of three hundred dollars and in default of payment to serve imprisonment in the county jail for the period of one day for each two dollars of said fine until the same be paid or satisfied. Defendant appeals from the judgment and order denying his motion for a new trial.

The following quotation from defendant's opening brief will obviate the necessity of stating at length the testimony: "There was sufficient evidence introduced to justify the jury in believing that the defendant sold the two bottles of beer to Frank Mahan, and that Frank Mahan was over the age of eighteen and under the age of twenty-one; therefore I do not propose to question those facts. There was sufficient evidence introduced to justify the jury in believing that Frank Mahan was a person likely to become addicted to the use of intoxicating liquors, or who was leading or in danger of leading an idle, dissolute, lewd, or immoral life; therefore I do not propose to question that fact. I make no attack on the credibility of the witnesses for the prosecution, and I shall treat these three facts as abundantly established by the evidence. However, I do propose to question the proposition that there was sufficient evidence to justify the jury that the act of the defendant in selling these two bottles of beer to Frank Mahan caused or tended to cause Frank Mahan to become or remain a person who was leading or in danger of leading an idle, dissolute, lewd, or immoral life, or a person who was likely to become addicted to the use of intoxicating liquor. In doing so I shall refer only to the evidence introduced by the

prosecution, and shall take it at its face value, making no attack on its credibility."

The argument that as matter of law the evidence was insufficient to justify the conviction is based upon the following propositions: 1. That the sale of beer to Frank Mahan, a person over the age of eighteen and under the age of twenty-one, was lawful under the state liquor law, to wit, section 397b of the Penal Code; 2. The act of selling the beer, in and of itself a lawful act, could only become unlawful under the juvenile court law if it caused or tended to cause Frank Mahan to become a delinquent; 3. The sale of beer to Mahan did not cause or tend to cause him to become or remain a delinquent for the reason that he did not consume even the smallest portion of the beer.

Defendant's attorney contends that because section 397b of the Penal Code makes it a crime to sell intoxicating liquor to a person under the age of eighteen years, there is an implied right given and it is perfectly lawful to sell such liquor to any person over the age of eighteen years, and hence the Juvenile Court Act cannot be given effect without holding that it works the repeal of section 397b. Section 21 of the juvenile court law (Stats. 1915, p. 1246) provides that "Any person who shall commit any act or omit the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of twenty-one years to come within the provisions of any of subdivisions 1 to 13 inclusive of section one of this act, or which act or omission contributes thereto, . . . shall be guilty of a misdemeanor. . . ."

There is no conflict between the two statutes nor are they irreconcilable. The section of the Penal Code is intended to reach specific offenses, to wit, sales of intoxicating liquors to minors under the age of eighteen years. The Juvenile Court Act is designed to protect all persons under the age of twenty-one years from suffering the consequences of *any* act which causes or tends to cause or encourages such persons to become addicted to the use of intoxicating liquor or to lead idle, dissolute, or immoral lives. If under certain circumstances it may reasonably be held that selling intoxicating liquor to any person under the age of twenty-one years might or would have such tendency, the act of selling such liquor comes clearly within the statute and is punishable as a misdemeanor. That

this particular act is punishable in a given case under another statute, namely, where the purchaser is a person under the age of eighteen years, can in no wise limit or affect the operation of the Juvenile Court Act. It does not follow that, because the selling of intoxicating liquor to a person under the age of eighteen years is made a crime, it is therefore lawful under all circumstances to sell such liquor to a person over the age of eighteen years and under twenty-one years. The Penal Code contains many sections denouncing as crimes various acts which when committed upon or with a minor would invariably cause or tend to cause such minor to lead an idle, dissolute, or immoral life. Yet those acts may properly be punishable as crimes independently of their effect as contributing to the delinquency of minors and thus violating the juvenile court law. For instance, the Penal Code makes it a felony to be guilty of lascivious conduct with a minor child. (Pen. Code, sec. 288.) Notwithstanding the existence of such statute, the guilty person may be prosecuted under the Juvenile Court Act because of the tendency of such conduct to cause the minor to lead a dissolute and immoral life.

In the case of the sale of intoxicating liquor to a person under the age of eighteen, the sale alone, regardless of its consequences, constitutes the crime under section 397b of the Penal Code. But where the sale might not of itself alone constitute the offense denounced by the Juvenile Court Act, the act must be accompanied by circumstances tending to show that it would cause the minor to lead an immoral, idle, or dissolute life. When these circumstances sufficiently appear, an offense is made out different from that referred to in section 397b of the Penal Code and may be punished under the Juvenile Court Act. As we understand defendant's position, he concedes that such is the law. It is urged, however, that the facts in this case show that the consequences contemplated by the Juvenile Court Act by the sale charged could not have followed, nor could the sale have had any tendency to cause the prosecuting witness, Mahan, to lead an idle, dissolute, or immoral life for the simple reason that he did not even taste of the beer; that all he did was to purchase the two bottles of beer and pass them over to witness McKay immediately after leaving defendant's saloon. If this was all that appeared, it might well be doubted whether there was sufficient evidence to support the verdict.

There was evidence that the boy, Frank Mahan, had been under observation by the juvenile court officers for some time; that he was a frequenter of saloons and billiard-rooms where liquor was sold; that he had been in the saloon frequently where defendant was in charge as barkeeper and had purchased and drunk liquor there; that he and another boy had been drinking beer the earlier part of the day charged, and that he went to this saloon purposely to purchase more beer with the intention of drinking it; that he put the bottles in his pocket and was on his way to the rendezvous to meet his boy friend when he was accosted by witness McKay, who was in the employ of the district attorney to discover violations of the law, and the bottles were taken from Mahan and were proved to be bottles of beer. It appeared, also, that Mahan was afterward adjudged a delinquent under the juvenile court law. He was, in fact, shown to be the very kind of person whom the statute was designed to protect and reform and who by being allowed to purchase beer would be encouraged to drink it and thus contribute to the more or less idle, dissolute, or immoral life he was shown to be leading. The intent moving defendant to sell him the beer is immaterial. It is the effect of selling and the tendency in selling to cause the minor to become a delinquent that the law contemplates, and not the motive or intent of the seller. Under the facts and circumstances here shown we think the jury were justified in reaching the verdict as rendered.

Defendant relies much upon expressions of the court in deciding the case of *People* v. *De Leon,* 35 Cal. App. 467, [170 Pac. 173], in which it is stated that the act or omission of the defendant must amount to "the breach of a definite duty, and is of such nature and tendency as to affect directly the welfare of such minor." Also reliance is placed upon expressions in *People* v. *Bergotini,* 172 Cal. 717, [158 Pac. 198], wherein it was said: "The statute must have contemplated some offense having not merely a possible, but an inevitable, effect upon the minor." Again, "If this information were to be upheld, it would be impossible to foresee what application juries might make of this law to persons having some remote possible connection with the delinquency or dependency of minors."

These observations of the court must be read in connection with the facts of the cases.

We do not understand the court to hold by the use of the terms "breach of a definite duty" in the De Leon case that the accused party must be shown to have violated some duty defined by statute or some particular obligation toward the minor. It may very properly be said that a definite duty is owed by all persons to abstain from doing any act having a tendency to cause a minor to become a delinquent or dependent. The court explains what is meant by the terms referred to in adding that the act must be "of such nature and tendency as to affect directly the welfare of such minor."

Where the court, in the Bergotini case, speaks of an "inevitable effect" which the act must have, the context shows that what is meant is that it is not sufficient to show that the act might have "some remote possible connection with the delinquency or dependency of the minor." We do not think the court intended to hold, nor do we think it should be held, that the effect of the act complained of must have an absolutely certain and unmistakable tendency to cause the minor to lead an idle, dissolute, or immoral life. The jury, in interpreting the facts, may apply the teachings of human experience. It is common knowledge that minors are susceptible to harmful influences more readily than are adults; that their power to resist such influences and to discriminate between good and evil or to comprehend the subtle effect which yielding to temptation may have upon their lives is much less. The laws of all civilized nations recognize the deficiencies of minors in respect of their mental and moral faculties and have thrown around them the protection which their immature years demand. These laws have always been given the most liberal construction in effectuating their object. The juvenile court law is one of the more modern devices of our reformatory statutes calculated to conserve and strengthen the moral forces of our youths and to protect them from the dangers and follies attending their immaturity.

The concrete question here is whether or not it may reasonably be said that the sale of beer to this boy, Mahan, in view of his character and habits and associates, would tend to cause him to lead or continue to lead an idle, dissolute, and immoral life. We feel justified in expressing the opinion that such sale did have this tendency.

The prosecuting witness, Mahan, was recalled for further direct examination and the following proceedings occurred:

''Mr. Nelson (district attorney) : Q. Frank, how many times have you been in the Myrtle bar? A. About a dozen times. Mr. Henderson: I object to that, incompetent, irrelevant, and immaterial, and has no bearing upon the particular offense charged here. The Court: The objection is overruled; you may answer. A. About a dozen times. Q. Have you ever purchased and consumed liquor in that saloon? A. Yes, sir. Mr. Henderson: We object to that under the former ruling of the court. The Court: I believe that will be sustained. Mr. Nelson: The object is to show that the last sale, the sale of the two bottles to Frank Mahan, encouraged him to remain a person who was likely to be an habitual user of intoxicating liquors. If we can show the liquor this lad has consumed in this saloon at previous times, I think we are entitled to do that, we are entitled to show that he was a frequenter of this saloon. It all shows his remaining or being encouraged or induced to remain a lad who was habitually or frequently using intoxicating liquors in that saloon or any other saloon. It is for that purpose only. The Court: It is for that particular purpose only? Mr. Nelson. Yes. (Argument.) The Court: It is not offered for the purpose of showing or tending to show that this defendant sold the two bottles of beer to Frank Mahan. It is not offered for that purpose at all. It is simply offered for the purpose of showing that Frank Mahan was addicted to the use of intoxicating liquors, and he would be likely to become an habitual drunkard. Mr. Henderson: I think the purpose of it is to bolster up their case by showing other events and other times, other places. I don't think it is competent. The Court: They are entitled to have it for the purpose of showing that Frank Mahan was a user of intoxicating liquors before the event, they are entitled to have it. Mr. Henderson: Do I understand the court, if the evidence is allowed, it is allowed for just that purpose? The Court: It is offered solely for that purpose, and is admitted solely for that purpose. Mr. Henderson: And only for that purpose? The Court: For that purpose only. Mr. Henderson: I wish to object to the introduction of such evidence even for the limited purpose on the same ground as my previous objection. The Court: Certainly, the objection will be overruled. . . . The jury will understand, though, from what I have said that the question asked this witness is allowed to be answered by him upon the theory that the evidence might tend to show that

this boy was a person who was in danger of becoming an habitual drunkard, and it is offered for that purpose, and for that purpose alone, not offered for the purpose of attempting to prove the main charge in the case, that is, that this defendant sold two bottles of beer to this witness.''

The admissibility of this kind of evidence and the reasons for admitting it in cases arising under the Juvenile Court Act were discussed by Justice Hart in *People* v. *Oliver*, 29 Cal. App. 576, 579, [156 Pac. 1005]. We think the testimony was for like reasons admissible in the present case.

The judgment and order are affirmed.

Hart, J., and Burnett, J., concurred.