[Crim. No. 464.    Third Appellate District.—May 3, 1919.]

## THE PEOPLE, Respondent, v. J. BLISS, Appellant.

[1] CRIMINAL LAW—GIVING AWAY OF ALCOHOLIC LIQUORS IN NO-LICENSE TERRITORY—VERDICT—EVIDENCE.—In this prosecution under the local option law for willfully, knowingly and unlawfully selling, furnishing, distributing, and giving away alcoholic liquor within no-license territory, the verdict of guilty was sufficiently supported by the evidence, although much of the evidence was of a circumstantial character.

[2] ID.—WHAT CONSTITUTES VIOLATION.—If the defendant, in such prosecution, by any means or method or in any manner gave or furnished or distributed intoxicating liquor to other persons within no-license territory, he was guilty under the statute of the offense charged. It was not necessary that he personally have performed the physical act of passing the liquor to the parties.

[3] ID.—EVIDENCE—PROBATIVE VALUE—ADMISSIBILITY.—Evidence is not rendered inadmissible because of the fact that it may be of small probative value as proof of the offense charged.

[4] ID.—HOSTILE WITNESS—LEADING QUESTIONS.—Where in such prosecution for unlawfully giving away liquor in no-license territory one of the witnesses appeared to be hostile to the prosecution—that is, inclined to tell as little as possible of what he actually knew—the defendant could not have suffered any damage from leading questions which the court permitted the district attorney to ask.

[5] ID.—SELF-SERVING DECLARATIONS—INTENDED USE OF LIQUOR.—In such prosecution, the court properly sustained the prosecution's objection to a question by defendant's counsel to a brother of the defendant calling for a declaration by the latter that the liquor which he had requested the witness to procure for him was to be taken to and used at the defendant's home.

[6] ID.—INSTRUCTIONS—CONVICTION UPON CIRCUMSTANTIAL EVIDENCE.—In this prosecution, it was not error to instruct the jury that "there is nothing in the nature of circumstantial evidence that renders it any less reliable than the other class of evidence. All that is required is this: If the testimony is sufficient to convince you as reasonable men beyond a reasonable doubt that the defendant did commit the act charged, then I charge you that it is your duty to convict, although such evidence may be of a cir-

---

4. Permitting leading questions as matter within discretion of trial court, note, 17 Ann. Cas. 840.

6. Relative value of circumstantial and direct evidence, note, 97 Am. St. Rep. 774.

6. Instructions on circumstantial evidence, note, 97 Am. St. Rep. 789.

cumstantial nature." Such instruction does not warrant an implication that the jury were authorized to convict on evidence not sufficiently convincing to show the defendant's guilt to a moral certainty.

[7] ID.—GIVING AWAY OF LIQUOR—KNOWLEDGE OF DEFENDANT.—In such prosecution, the court did not commit error in modifying two of defendant's proposed instructions, by adding thereto that if the defendant knew that any person or persons were drinking from his jug of whisky, and, so knowing that fact, acquiesced in, consented to, or encouraged such person or persons to drink from said jug, in that case he would be guilty, although he did not personally hand or deliver said jug to such person or persons.

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. L. Ford for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

HART, J.—An information was filed in the superior court of the county of Humboldt, charging that the defendant, on the fifth day of October, 1918, within no-license territory, "did willfully, knowingly and unlawfully, sell, furnish, distribute and give away alcoholic liquors, to wit: whisky . . . to George Normile and Dan Rogers and other persons whose names are unknown." Defendant was convicted of the crime charged in the information and was sentenced to pay a fine of six hundred dollars, or if the fine be not paid to be imprisoned in the county jail one day for each two dollars of said fine. The appeal is by the defendant from the judgment and from an order denying his motion for a new trial.

The defendant first contends that the evidence does not support the verdict.

It was stipulated at the trial that the town of Pepperwood, in Humboldt County, was in "no-license territory."

The evidence shows that the defendant lived with his brother, Daniel Bliss, and his sister in a house on the road to Eureka about one mile from the store of one Zecca, in Pepperwood, and that defendant always kept intoxicating liquors at his home for his own use. On the fifth day of

October, 1918, his supply of whisky being exhausted, he gave some money to his brother, Daniel, who was going to Eureka, with which to buy a gallon of whisky, and told him to leave it at the house; that he bought the whisky to be used at his home. Daniel Bliss bought a gallon demijohn of whisky at Eureka, put it in a suitcase belonging to defendant, and in the afternoon started home on a stage. At the town of Loleta he got off the stage but left the suitcase on it. The driver of the stage, when he reached Zecca's store at Pepperwood, left the suitcase there, which was the customary place where he left parcels for people in that locality. Daniel Bliss took passage on another stage and arrived at Pepperwood between 9 and 10 o'clock that night.

Defendant reached his home at about 5 o'clock in the evening and saw the stage go by his house, but it did not stop. At about 8 o'clock he attended a dance, at a hall across the street from Zecca's store, in Pepperwood, and his brother, Daniel, also went to the dance when he arrived in town. Defendant asked him if he had sent the whisky and Daniel said he had but did not know whether it had been left at the store or not. At about 11 o'clock on that night, defendant asked Zecca if there had been a suitcase left there for him by the stage driver. Zecca answered that there had and that if defendant wanted it he had better take it because he (Zecca) was going to close up for the night, and they went over to the store. The only light in the store was a flashlight which Zecca had. Defendant took the demijohn out of the suitcase and went out on the porch of the store. He there met Dan Rogers, whom he recognized by his voice, it being a dark night; there were others present whom he did not recognize; later, he recognized Normile by his voice. He stopped to talk with Rogers, set his jug on the porch, and commenced rolling a cigarette.

Up to this point there is no conflict in the evidence, except that the arresting officer, Frank W. Anderson, testified that it was a moonlight night. As to this, the witness was evidently mistaken, for the weather observer at Eureka testified that the moon set that night at 5:34 P. M. Anderson testified that at 11 o'clock at night, on the 5th of October, 1918, he saw four or five men, among them the defendant, upon the platform in front of Zecca's store. He said: "When I first saw him he was in the act of getting that

demijohn from George Normile and I stepped up and grabbed the demijohn and asked him who that belonged to. He said, 'It belongs to me.' " The witness said he took the demijohn from the hands of defendant, that he put a seal on it and gave it to the district attorney, and that afterward he sampled the contents and found that the demijohn contained whisky. He stated that before he seized the demijohn he saw two men drink from it, one of whom he recognized as George Normile; that the other man smacked his lips and said it was "damned good stuff."

William McKay, an employee of the district attorney of Humboldt County, who was with Anderson at and prior to the time of the arrest, corroborated the latter as to what occurred at the time he took possession of the demijohn.

Ambrose M. Zecca, the owner of the store referred to, testified that he had gone from the dance-hall to his store with other men ten or fifteen times that night; that he saw defendant, who said he wanted to go to the store and get his suitcase. He was asked what defendant's condition as to sobriety was and he replied that he "was feeling pretty good." Witness, with defendant and Normile and some strangers, among them Dan Rogers, went to the store. Defendant and Normile went in with him and defendant got a demijohn from the suitcase and took it outside with him. Witness said he had a drink from a jug but would not say it was the one defendant had; that he was not present when Anderson came up.

Dan Rogers testified that he left the dance-hall with defendant to go to the store; that he knew they were going for a drink, although he would not say defendant asked him to go for that purpose; the defendant entered the store and came out with a demijohn; that the jug was passed around but he would not say that defendant passed it around; that he (witness) had a drink out of a jug but did not know who handed it to him nor whose jug it was.

George Normile testified that at about 11 o'clock, while in the dance-hall, he said to defendant that he wanted to have a glass of beer or something, to which defendant replied that he "did not have any beer, maybe we can find something else"; that they waited until Dan Rogers finished dancing and the three of them, with some strangers, went across to the store; that defendant went into the store and brought

a demijohn out on to the porch; that witness was in the act of taking a drink out of the jug when Anderson's party turned a flashlight on them and came up to the porch.

Edward Bady testified that at the dance-hall he smelled liquor upon the defendant; that he was one of the party that crossed the street to the store; that he did not have a drink out of the demijohn because it did not get around to him; that he saw the defendant pass the jug to someone.

The defendant testified that a man had treated him to whisky before the occurrence at Zecca's store; that when he took the demijohn from the store to the porch he had no drink from the jug that he remembered of; that after he had finished making his cigarette he picked up the jug and at that time the officer flashed a light upon him and came up; that he had not offered the jug to anyone for the purpose of taking a drink; that he did not give his consent to anyone taking a drink out of it, and that he did not know the demijohn was making the rounds and that people were drinking from it. He denied having the conversation related by Normile to the effect that defendant told Normile he did not know where there was any beer but that he had something else.

[1] The foregoing synoptical statement of the evidence plainly enough shows that the verdict is sufficiently supported. It is true that much of the evidence was of a circumstantial character, but the circumstances so shown, having been accepted by the jury as proved, were enough to warrant the inference that the defendant owned the jug of whisky, that he invited the parties above named to the store where the jug was to drink therefrom and that one or more did drink from the jug. Whether actually the defendant himself performed the physical act of passing the jug to all the parties who drank from it or to any of them, in view of the persuasive character of the evidence or the circumstances in support of the theory of guilt, is immaterial. [2] If he by any means or method or in any manner gave, or furnished, or distributed intoxicating liquor to other persons within no-license territory, he is guilty under the statute. If, for illustration, a party should place a jug or other vessel containing liquor on a table or upon a bench or upon the floor or the ground within no-license territory and by words or acts or conduct sufficiently indicative of the fact invited others to partake thereof either in a limited degree or *ad libitum,* he

would be guilty under the law as it is written of furnishing
intoxicating liquor to others within such territory.

The testimony shows that the defendant owned a jug of
whisky which was at Zecca's store and that he invited sev-
eral friends to go to the store to get a drink of "something
else than beer"; that defendant secured the jug from the
store and that one or two persons drank from it. This tes-
timony falls very little, if any, short of conclusively showing
the guilt of the accused under the local option law.

It is next claimed that the court committed prejudicial
error in certain rulings on evidence.

Several witnesses were asked as to whether, prior to the
time the defendant went to the store, other parties had gone
over there. These questions were objected to by counsel for
defendant but the testimony was admitted upon the promise
of the district attorney to "connect it up." One of the wit-
nesses replied that he had seen several parties go to the store
before the defendant was seen there, and heard one of them
remark that it was "damned good stuff." Appellant com-
plains that it was not connected with defendant; that the in-
ference drawn by the district attorney was that these other
parties had gone to the store to drink the liquor defendant
had there, but that defendant did not know the liquor was
there until 11 o'clock, when the storekeeper told him it was.

The objection to this testimony goes more to its weight than
to its materiality, relevancy, and competency. It was shown
that defendant had requested his brother, Daniel, to procure
the whisky for him and it is a reasonable inference from all
the circumstances that he expected it to be left at Zecca's
store, he having asked the latter if a suitcase in which the
whisky had been carried by Daniel had been left at his
(Zecca's) store. Of course, the parties referred to might
have gone to the store to eat Swiss cheese and crackers or
some other article not thus far prohibited to the use of man
by the stern mandates of the law, and the party who made
such favorable comment upon the quality of the article they
had partaken of might have had reference to something other
than intoxicating liquor, but this was for the jury to deter-
mine when considering it in connection with the evidence
showing that the defendant did have whisky at the store and
that several persons did subsequently drink from the jug in
the defendant's presence. The ultimate significance of the

testimony was in the inference to be deduced therefrom that the defendant had told said parties that he had the whisky at the store and that they were at liberty to go to the store and help themselves to it.  [3]  It is true that the circumstance was of small probative value as in proof of the charge, but, as suggested in a different form of language, this did not render it inadmissible.  It is quite manifest, though, that, even if we were required to hold that it was improperly admitted, it could not have prejudiced the defendant, since it is very clear that the verdict resulted from the testimony showing that certain parties did drink from the jug in the defendant's presence and that the jug then contained whisky.

Defendant complains of some other rulings respecting the evidence, the objections being that by them the court permitted the district attorney to ask one of his witnesses leading questions and to ask questions upon the assumption that certain facts not in proof had in fact been shown.  Also, it is objected that the court erred in refusing to permit Dan Bliss, who testified for the defendant, and who, as seen, purchased and had left at Zecca's store the whisky for defendant, to testify as to whether the defendant, previously to the purchase, said to the witness anything "about your obtaining some whisky for his [defendant's] home."  [4]  The defendant could not have suffered any damage from the leading questions referred to.  The witness to whom they were put was one of the parties who were with the accused when whisky was drunk from his jug, and he appeared to be hostile to the prosecution—that is, inclined to tell as little as he actually knew of the matter as possible.  A witness in that attitude of mind toward the party calling him would not be likely to tell an untrue story favorable to such party merely because questions suggestive of his answers were propounded to him.  [5]  The objection to the question by defendant's counsel to Daniel Bliss calling for a declaration by defendant that the liquor he requested said Daniel to procure for him was to be taken to and used at his (defendant's) home was properly sustained on the ground that it was self-serving.

There are very many other assignments involving challenges to the soundness of rulings upon the evidence, but an examination of these has convinced us that they possess no force.

The objection that the district attorney, in his argument to the jury, transcended the record and thus brought into it matters calculated to prejudice the defendant is not well taken. This objection arises from the reference to by that officer and his emphasis of the circumstance that, although the stage on which Daniel Bliss carried the suitcase containing the jug of whisky passed near the home of the defendant, the whisky was not left there but taken on to the store of Zecca. This was an important circumstance, was shown by the evidence to have occurred and, of course, the district attorney was clearly within his rights in making the most out of it in argument that the circumstance would legitimately justify.

[6] In its instructions, the court, after explaining the difference between direct and circumstantial evidence, told the jury: "There is nothing in the nature of circumstantial evidence that renders it any less reliable than the other class of evidence. All that is required is this: If the testimony is sufficient to convince you as reasonable men beyond a reasonable doubt that the defendant did commit the act charged, then I charge you that it is your duty to convict, although such evidence may be of a circumstantial nature."

Appellant claims that this instruction was not warranted by the facts in the case and that it implied "that the jury may act on less than convincing evidence or without the moral certainty required by law."

The instruction was not only pertinent to the evidence but it contains a correct statement of the law. Nor does it warrant the implication that the jury were authorized to convict on evidence not sufficiently convincing to show the defendant's guilt to a moral certainty. Of course, the objection that the instruction implies that the jury may "act on less than convincing evidence" really means nothing, for it is the duty of a jury to *act* on (or consider) all the evidence submitted to them, and this they always presumptively do whether they convict or acquit.

The following instruction, given to the jury, is also complained of: "I instruct you that it is not necessary that the evidence should show that the defendant personally handed this demijohn of whisky, if such it was, to George Normile, Dan Rogers or any other person who then and there drank thereof, to warrant you in finding the defendant guilty of

the charge alleged in the information; but it is enough if the evidence shows beyond a reasonable doubt that the defendant owned a demijohn of whisky and placed it in a public place and in the immediate presence of said men, with the intention that they should drink thereof, and that they or one or more of them did drink thereof or that the defendant stood in their immediate presence and saw said men, or some of them drink thereof and encouraged or asked them to drink thereof.''

That instruction corresponds with the construction above given of the local option law upon which the information against the accused is based, and, therefore, nothing more need be said about it.

[7] The court modified two instructions proposed by the defendant—one defining the word ''gift'' and the other defining the word ''distribute''—by adding thereto substantially the language which the instruction last above considered contained, which, in effect, is as follows: ''That if the defendant knew that any person or persons were drinking or did drink from the jug in question, and, so knowing that fact, acquiesced in, consented to, or encouraged such person or persons to drink from said jug, in that case he would be guilty, although he did not personally hand or deliver said jug to such person or persons.'' What we have said of the complaint against the instruction last above disposed of applies to the objection to the one in hand.

We have now considered herein all the objections against the result arrived at below which in our judgment calls for special notice, and our conclusion is that no substantial legal reason has been shown for disturbing the verdict.

The judgment and the order are affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 30, 1919.

All the Justices concurred except Melvin, J., and Lennon, J., who were absent.