[Crim. No. 4915. Second Dist., Div. Two. Apr. 23, 1953.]

THE PEOPLE, Respondent, v. EUGENE H. DEIBERT
et al., Appellants.

Morris Lavine and Albert E. Isenberg for Appellants.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

FOX, J.—Defendants were convicted by a jury on three counts of violation of section 702 of the Welfare and Institutions Code. Each appeals from the judgment and from the order denying his motion for a new trial.

About 10:30 p.m., on April 17, 1952, Bob and Leonard, who were each 17 years old and high school students, entered the Pilot Wheel Club at Pismo Beach, California. Bob had a brief conversation with defendant Deibert, who was one of the owners of the café. The boys took seats at the bar; Deibert stood only some 6 feet away when they ordered two "coke highs"; the bartender, defendant Longley, looked up past the boys for a minute and then mixed the drinks. Bob paid $1.00 for the two drinks, which consisted of whiskey and Coca Cola. During their visit they imbibed several more drinks of the same variety for which they paid 50 cents each. Their friend, Larry, also 17 years old and a high school student, joined Bob and Leonard and took a taste from the glass of each. Thereupon Bob bought a "coke high" for Larry. The boys remained there for about an hour. The trio left the café but Bob and Leonard returned about 1:00 a. m., when they were joined by another boy. All were served more "coke highs." Bob testified that he and Leonard were served about six such drinks during the evening and early morning.

Longley testified that he did not serve alcoholic beverages to any of these boys and would not have served them such drinks without checking first to see whether they were over 21 because they looked young. Deibert denied having had any conversation with Bob that night. He testified that he did not see the boys on his premises prior to their apprehension by Mr. Sutherland, a state liquor control officer.

Defendants contend that the evidence was insufficient to support the verdict in that it failed to show that any of the minors was "encouraged to use intoxicating liquor to such an extent that he became idle, dissolute and immoral." It was not necessary, however, to show that the sale of alcoholic beverages to these minors resulted in their actual entry upon an idle or immoral course of conduct. (*People* v. *Wilhite*, 49 Cal.App. 246, 250 [193 P. 151].) The main purpose of the Juvenile Court Law is to prevent the delinquency of children. By the provisions of section 702, Welfare and Institutions Code, any act or omission which "tends to cause or encourage" a minor to become a delinquent is made crim-

inal. ■ A case is therefore established when the evidence proves acts or omissions on the part of the defendants which tend to cause or encourage the minors to lead an idle, dissolute, lewd or immoral life. (*People* v. *Calkins,* 48 Cal.App.2d 33, 35 [119 P.2d 142]; *People* v. *Cohen,* 62 Cal.App. 521, 526 [217 P. 78]; *People* v. *Kinser,* 99 Cal.App. 778, 782 [279 P. 488].) ■ Whether serving alcoholic beverages to a minor tends to cause him to become an idle, lewd, dissolute or immoral person is essentially a question for the jury. (*People* v. *Calkins, supra; People* v. *McDougal,* 74 Cal.App. 666, 674 [241 P. 598].) ■ The jury impliedly found that the minors were served "coke highs," containing whiskey and Coca Cola, by the defendants at the Pilot Wheel Club bar and that the furnishing of such drinks tended to cause them to come within the purview of section 700(k) of the Welfare and Institutions Code. Such a finding is reasonable and is fully justified by the evidence. (*People* v. *Perfetti,* 88 Cal. App. 609, 614 [264 P. 318]; *People* v. *De Leon,* 35 Cal.App. 467, 470-471 [170 P. 173]; *People* v. *Haney,* 100 Cal.App. 295, 299 [279 P. 1054].)

■ Deibert claims the evidence fails to show that he "participated in any act or omitted to perform any duty which would tend to cause the minors to lead an idle, dissolute and immoral life." The testimony of Bob that he engaged Deibert in conversation when he and Leonard first went into the club; that Deibert was only about 6 feet away when he ordered two "coke highs" from Longley; that the latter upon receiving Bob's order for such alcoholic beverages, looked past him briefly in the direction of Deibert and then filled the order, justified an inference on the part of the jury that Longley, the bartender, sought and received the approval of Deibert before he served the minors the first "coke highs." The minority of the boys must have been apparent in view of Longley's statement that he would not have served them because they looked so young. Furthermore, the jury had an opportunity to see them on the stand and appraise the youthfulness of their appearance. It would, of course, have been unnecessary for Longley to secure Deibert's consent to serve the boys if the drinks ordered had been nonalcoholic. Such tacit approval could reasonably be inferred to apply to the serving of subsequent alcoholic drinks. It is thus plain that Deibert did participate in an act and omit to perform a duty which resulted in these boys being served a number of drinks containing alcohol. The jury

could reasonably have concluded that such conduct had a tendency to cause the minors to become delinquent.

Defendants also challenge the sufficiency of the evidence on the theory that the words ''idle, dissolute, lewd and immoral'' (see § 700(k) Welf. & Inst. Code) refer to sexual misconduct and that none was shown. They are in obvious error. ■ ''Idle'' certainly does not have such a connotation. It means: not occupied or employed; to loaf or dissipate one's time. (See Webster's New Internat. Dict., 2d ed.) ■ The term ''immoral'' is not confined to sexual matters. (*Orloff* v. *Los Angeles Turf Club,* 36 Cal.2d 734, 740 [227 P.2d 449].)

■ Defendants contend that section 22, Article XX of the California Constitution and the Alcoholic Beverage Control Act cover the entire field of liquor control and any violations thereof, thereby precluding the prosecution of defendants under section 702 of the Welfare and Institutions Code on a contributing charge. This argument is without foundation. Section 69 of the Alcoholic Beverage Control Acts repeals certain specific statutes. It does not include among them section 702 of the Welfare and Institutions Code. ■ ''. . . when the legislature repeals certain acts and excludes mention of other acts even though they refer to the same subject, it is the intention of the legislature to leave standing those acts which are not mentioned.'' (*In re Zadro,* 16 Cal.App.2d 398, 399-400 [60 P.2d 557, 986].) ■ Thus the effectiveness of section 702 of the Welfare and Institutions Code in dealing with conduct involving alcoholic beverages which tend to contribute to the delinquency of minors remains undiminished. Here the acts of the defendants are punishable because they have a tendency to cause minors to become delinquent. This aspect of defendants' acts is not covered by the Alcoholic Beverage Control Act. By legislative design such acts constitute an independent offense. (See *People* v. *Baker,* 38 Cal.App. 28, 31-32 [175 P. 88].)

■ Defendants attack the constitutionality of section 702 of the Welfare and Institutions Code as applied in the instant case, asserting that it is too vague, indefinite and uncertain to form the basis of a criminal charge and hence invalid under the due process clause of the Fourteenth Amendment to the Constitution of the United States. They contend that the words ''dissolute'' and ''immoral'' contained in the language of the statute and incorporated in the charging clause

of the information are not sufficiently definite to inform those subject to its sanctions what type of conduct is thereby denounced. This challenge is not well taken. ▆▆ Where a statute contains a reasonably adequate disclosure of the legislative intent regarding an evil to be combatted in language giving fair notice of the practices to be avoided, a court will be slow to say that such a statute is too indefinite to be enforced. ▆▆ The complexities of the social problems dealt with by the Legislature require that a practical construction be given to the language employed by the draftsmen of legislation lest their purposes be too easily nullified by overrefined inquiries into the meanings of words. ▆▆ ''Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible.'' (*People* v. *Kennedy*, 21 Cal.App.2d 185, 193 [69 P.2d 224].) The use of words of general meaning is the essence of our code system. ▆▆ Thus, in a sphere so vital to the community as the welfare of its youth, the words used in a statute designed to enable the Legislature to come to grips effectively with the problems of juvenile delinquency should be upheld where their frequent use in penal statutes gives assurance that they are understood by men of ordinary intelligence.

▆▆ ''To comply with the constitutional requirement of due process of law, the crime for which a defendant is being prosecuted must be clearly defined, but it is only necessary that the words used in the statute be well enough known to enable those persons within its reach to understand and correctly apply them. ▆▆ 'To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited.' [Citation.]

▆▆ ''Although higher standards of certainty will be required of penal than of civil statutes [citation], a statute is sufficiently certain if it employs words of long usage or with common-law meaning, 'notwithstanding an element of degree in the definition as to which estimates might differ [citations].' '' (*Lorenson* v. *Superior Court*, 35 Cal.2d 49, 60 [216 P.2d 859].) This same decision notes, with appropriate citations of authority, that California courts have upheld statutes employing such terms as: ''to make diligent effort to find the owner;'' ''unreasonable speed;'' ''unjustifiable physical pain or mental suffering;'' and ''to the annoyance of any other person.''

██ Applying these criteria and considering the relative certainty of words employed in the statutes referred to whose validity has been upheld, it is manifest that the words "dissolute" and "immoral" meet the constitutional standards of certainty and definiteness. ██ A person charged with being a dissolute person is given sufficient warning of the nature of his offense. (*In re McCue*, 7 Cal.App. 765, 766 [96 P. 110].) ██ " 'Lewd' and 'dissolute' are terms often used interchangeably. . . . 'Dissolute' is defined to mean: "2. . . . loose in morals and conduct; wanton; lewd; debauched.' Webster's New Inter. Dict., 2d ed." (*People* v. *Babb*, 103 Cal.App.2d 326, 330 [229 P.2d 843].)

Likewise, the relatively comprehensive word "immoral" is one which conveys concrete impressions to the ordinary person. It is in constant use in popular parlance and is found in every dictionary. ██ When used in a legal sense in relation to statutes involving an exercise of the police power to promote the general welfare, it has an accepted definition of something that is inimical to good order and *contra bonos mores*. (*People* v. *Dever*, 242 Ill.App. 1, 4; *Davenport* v. *District of Columbia*, 61 A.2d 486, 488; 42 C.J.S. Immoral, p. 395.) In the case of *Orloff* v. *Los Angeles Turf Club*, 36 Cal. 2d 734 [227 P.2d 449], the court had under consideration a statute authorizing the exclusion from a place of public amusement of any person having an "immoral character." Though holding that the evidence of alleged immorality did not justify plaintiff's exclusion from a race track, the court made the following observation in the face of plaintiff's contention that the phrase "immoral character" was too vague and uncertain to be applied as a standard (p. 740): "The term 'immoral' has been defined generally as that which is hostile to the welfare of the general public and contrary to good morals. Immorality has not been confined to sexual matters, but includes conduct inconsistent with rectitude, or indicative of corruption, indecency, depravity, dissoluteness; or as wilful, flagrant, or shameless conduct showing moral indifference to the opinions of respectable members of the community and as an inconsiderate attitude toward good order and the public welfare. (Words & Phrases, Perm. ed. vol. 20, pp. 159-160.)

"The Legislature did not specify who was to be considered a person of immoral character. . . . But the omission in the present statute is not fatal to any use of the standard of immorality as a guide. Here it becomes a matter of construction and application conformable to the legislative objective

in providing the various standards. . . ." ▮ It is thus clear that the word "immoral," as used in the context of the statute here involved, possesses sufficient certainty of meaning to forewarn men of common intelligence as to the character of the proscribed conduct.

The authorities defendants cite in support of their contention are not applicable: in the first instance, because none of them involve consideration of the terms "dissolute" or "immoral;" and second, because the statutory terms there involved were broad, sweeping, and ill-defined generalities which were too uncertain to furnish an adequate standard of culpability.

Defendants predicate error on the giving of particular instructions.

▮ 1. After defining "alcoholic beverages" in the language of the Alcoholic Beverage Control Act, the court instructed the jury that: "Subdivision (b) of Section 61 provides as follows: 'Any person under the age of twenty-one years who purchases any alcoholic beverage or any person under the age of twenty-one years who consumes any alcoholic beverages in any on-sale premises, is guilty of a misdemeanor.'" Defendants argue that the instruction was confusing and misleading on the grounds that proof that the minors in this case might have violated the Alcoholic Beverage Control Act was not proof that the defendants violated the Welfare and Institutions Code, and that the jury was in effect told that the owner of the establishment where a minor purchased liquor was guilty of violating section 702 of the Welfare and Institutions Code. When all the instructions are read as a whole, as they must be (*People* v. *Kendall*, 111 Cal. App.2d 204 [244 P.2d 418]), the jury could not reasonably have drawn the conclusion asserted by defendants. The court further specifically instructed the jury that the offense charged was not necessarily complete even if it was established beyond a reasonable doubt that the defendants did provide intoxicating liquor to a minor, but that guilt was established only where such act caused or tended to cause or encourage the minor to lead an idle, lewd, dissolute or immoral life. This instruction properly and specifically advised the jury of the kind, quality and degree of proof required to convict the defendants. Defendants cannot predicate error on a single instruction when the charge viewed in its entirety fully and fairly informs the jury on the requirements of the law. (*People* v. *Cornett*, 93 Cal.App.2d 744, 750 [209 P.2d 647].)

In connection with this same instruction, defendants contend that even if it be argued that a duty was imposed upon them by the Alcoholic Beverage Control Act not to furnish liquor to the minors, it was improper not to submit a further instruction that the jury must be convinced beyond a reasonable doubt that the minors did in fact violate the Alcoholic Beverage Control Act. This is without merit. The broad duty imposed on defendants was to abstain from any act tending to cause the minors to lead an idle, lewd, dissolute or immoral life. It was not necessary to instruct that each fact in the chain of circumstances establishing defendants' guilt be proved beyond a reasonable doubt. "The doctrine of reasonable doubt applies to proof of *guilt* and not to the establishment of each incident or event inculpating the defendants. [Citations.] A reasonable doubt that would warrant acquittal is one that results or arises from 'a consideration of all the evidence' in the case [citations]." (*People* v. *Klinkenberg*, 90 Cal.App.2d 608, 632 [204 P.2d 47, 613]; *People* v. *Kross*, 112 Cal.App.2d 602, 615 [247 P.2d 44].)

 2. The court instructed the jury as follows: "when alcoholic beverages are sold or delivered to a minor under the age of twenty-one, the purchasing or receiving of the alcoholic beverages by a minor brings the minor within subdivision (m) of section 700 of the Welfare and Institutions Code." Defendants complain that they were thereby placed on trial for an offense with which they were not charged in the information. This instruction, which in effect indicates that if the jury believed that defendants had furnished liquor to the minors then this act would bring them within the Juvenile Court Law, was based on evidence properly admissible as a part of the res gestae of the offense and was therefore pertinent to the issue of whether such conduct had a tendency to encourage the minors to lead idle, lewd, dissolute or immoral lives. Furthermore, in reading the charge as a whole*

---

*The court instructed the jury in part as follows:

"You are instructed that the offense of contributing to the delinquency of a minor is not necessarily complete, even if it should be established beyond a reasonable doubt that the person charged did wilfully furnish, sell or give intoxicating liquor to a person under the age of twenty-one (21) years. In the case of each of the defendants, who are here charged with the offense of contributing to the delinquency of a minor, guilt of the offense charged is established only where the evidence shows beyond a reasonable doubt not only that the particular defendant did wilfully furnish, sell or give intoxicating liquor to a person under the age of twenty-one (21) years, but that such conduct

we are persuaded that this instruction cannot be deemed to have prejudiced defendants in view of the complete instructions given to the effect that no conviction shall be rendered unless the jury also believed that by permitting such purchase and receipt of the liquor, defendants caused or tended to cause the minors to lead idle, dissolute or immoral lives.

3. Defendants suggest the second paragraph of the instruction last quoted, setting forth the purposes of the Juvenile Court Law, was argumentative and improper. ██ While a judge is not bound to instruct on the history, object, or purpose of a law, it is proper to add to the knowledge of the jury on the subject at hand, as an aid to their deliberations, a correct statement of the purpose of such law in explanation of the instructions which follow. (See *People* v. *Calkins*, 48 Cal.App.2d 33, 36 [119 P.2d 142] ; 24 Cal.Jur. pp. 846-847.) They also assert that as the words "idle, lewd, dissolute or immoral" were not defined, the jury was left to speculate on their meaning and it cannot be told on what theory they may have reached their verdict. That this argument is fundamentally untenable is apparent from our previous discussion of the certainty of the words referred to. ██ It is unnecessary for the court to define commonplace words which

---

by the defendant caused or tended to cause or encourage the minor involved to lead an idle, dissolute, lewd or immoral life.

"You are instructed that the basic purpose of the Juvenile Court Law is to safeguard children and all other persons under the age of twenty-one years from those influences which tend to cause or encourage them to become delinquent, and it is not necessary that the prosecution show that the juvenile has in fact become delinquent, provided you find from all the evidence of the case that the acts alleged in the information have been committed and that such acts would manifestly tend to place the minor in a position where he would be in danger of leading an idle, lewd, dissolute, or immoral life.

"If you should find from the evidence, beyond a reasonable doubt, that the defendants Eugene H. Deibert and Leo Longley, sold, furnished or gave any alcoholic beverages to Alexius Wierbinski, Calvin L. Epp and Larry Oren Knight, minors under the age of twenty-one years and that such act caused or tended to cause or encourage the said minors to be or become persons who are in danger of leading an idle, dissolute or immoral life, you should find the defendants guilty as charged in the information.

"If you find from the evidence beyond a reasonable doubt, that the minors named in the Information, or any of them, were present in the Pilot Wheel Club at any time during the evening of April 17, 1952, or early morning of April 18, 1952, and that they, or any of them, were served at any time intoxicating liquor by the defendant, Leo Longley, with the knowledge or consent of the defendant, Eugene H. Deibert, and as a result thereof, they were in danger of leading an idle, dissolute, lewd or immoral life, then you should find the defendants guilty of the count naming the minors served."

may normally be presumed to be within the understanding of jurors. (*People* v. *Roth*, 137 Cal.App. 592, 606 [31 P.2d 813]; *People* v. *Halbert*, 78 Cal.App. 598, 612 [248 P. 969].)

The terms enumerated above are used in a nontechnical sense and are within the ken of average laymen. In *People* v. *Young*, 44 Cal.App. 279, 282 [186 P. 383], the court states: "It will be seen that this instruction quotes section 21 of the juvenile court law in full, and that it also quotes that portion of section 1 of the juvenile court law contained in subdivision 11 thereof, which provides that the law shall be given application to any person under the age of twenty-one years, 'who is leading, or from any cause is in danger of leading, an idle, dissolute or immoral life.' We are satisfied that the jury was by these instructions informed that if they found that the defendant had committed the acts with which he stood charged in the information he should be found guilty of a violation of these provisions of the juvenile court law. And since, as we have seen, we have held in the case of *People* v. *De Leon, supra*, that these provisions of the juvenile court law are neither vague nor indefinite in their terms, we cannot here say that the charge of the court which embodies those terms is so vague and indefinite that the jury would be either insufficiently instructed or be misled thereby."

4. The following instruction is also challenged:

"If you find from the evidence beyond a reasonable doubt, that the minors named in the Information, or any of them, were present in the Pilot Wheel Club at any time during the evening of April 17, 1952, or early morning of April 18, 1952, and that they, or any of them, were served at any time intoxicating liquor by the defendant, Leo Longley, with the knowledge or consent of the defendant, Eugene H. Deibert, and as a result hereof, they were in danger of leading an idle, dissolute, lewd or immoral life, then you should find the defendants guilty of the count naming the minor served." It is asserted that this authorizes the conviction of defendant Deibert merely by reason of knowledge or consent without requiring an affirmative act of contribution as provided by the statute. According to section 702 of the Welfare and Institutions Code, a person who "omits the performance of any duty . . . which . . . causes or tends to cause or encourage any person under the age of twenty-one years to come within the provisions of any of the subdivisions of section 700 of said code or which . . . contributes thereto . . . is guilty of a misdemeanor . . ." Defendant Deibert had a duty under section

61 of the Alcoholic Beverage Control Act, as well as by virtue of his proprietorship of the club, not to allow the furnishing of intoxicants to minors in his establishment. He was present when the minors entered and was aware of what they ordered from the bartender. Therefore the instruction relating to such knowledge and acquiescence was properly given, regardless of any affirmative act on his part. (*People* v. *Bliss*, 41 Cal.App. 65, 73 [182 P. 63].) ■ Moreover, it has been held that an employer is criminally liable for an illegal sale of liquor by a clerk made with the employer's knowledge. (*In re Souza*, 65 Cal.App. 9, 11 [222 P. 869].) The case of *People* v. *Weber*, 84 Cal.App.2d 126 [190 P.2d 46], is readily distinguishable by virtue of completely different factual circumstances. There the court found not only the absence of any duty owed to the minors, but further found the evidence did not establish that defendant had knowledge of any impropriety that would result from his giving the minors the right to occupancy of his barn.

Defendants assign as error the court's refusal to give a series of instructions requested by them. These instructions, consecutively numbered for convenience, are set forth in the margin.* ■ As to No. 1, the rule is stated in *People* v.

---

*No. 1. "You are instructed that the charge of contributing to the delinquency of a minor is easily made and difficult to disprove, for which reason the testimony of the prosecuting witnesses should be examined with caution.

2. "You are instructed that intoxicating liquors may be lawfully sold, served and consumed in the PILOT WHEEL CLUB, and that the PILOT WHEEL CLUB is a bona fide restaurant, cafe and public eating place.

3. "You are instructed that Section 51 of the Civil Code of California, which was in full force and effect on the 17th day of April, 1952, provides that all citizens, including minors, within the jurisdiction of the State of California are entitled to be present in bona fide restaurants, cafes and public eating places.

"You are further instructed that whoever denies the right to any citizen, including minors, to be present in any bona fide restaurant, cafe or public eating place, shall be liable in damages to the person or persons denied the use of such facilities.

4. "You are instructed that Section 2(b) of the Alcoholic Beverage Control Act, which was in full force and effect on the 17th day of April, 1952, provides that alcoholic beverage means and includes alcohol, spirits, liquor, wine, beer and every liquid or solid containing alcohol, spirits, wine or beer and which contains one half ($\frac{1}{2}$) of one (1) per cent or more of alcohol by volume. Therefore, I charge you that if you are not convinced beyond a reasonable doubt that the defendants did wilfully furnish, sell or give beverages containing one half ($\frac{1}{2}$) of one (1) per cent or more of alcohol by volume to BOB WIERBINSKI, CALVIN LEONARD EPP or LARRY OREN KNIGHT, then you must acquit the defendants of the offenses charged against them in the complaint.

5. "You are instructed that to cause or tend to cause a person to become idle means more than that such person should become or tend

*Reznick*, 75 Cal.App.2d 832, 839 [171 P.2d 952], that: "While it is the law that in prosecution for sex offenses, it is the duty of the trial court on its own motion to give a cautionary instruction to the effect that the charge is easily made and difficult to disprove, for which reason the testimony of the prosecuting witness should be examined with caution (*People v. Putnam*, 20 Cal.2d 885 [129 P.2d 367]), it is difficult to understand how such an instruction could be considered necessary in a case such as this. And even if it may have been proper to give such an instruction, the failure to give one could not constitute prejudicial error upon the record here." This statement is apposite to the instant case, which was not a prosecution for a sexual offense. ▮ There was no prejudicial error in rejecting defendants' requested instructions 2 and 3. Defendants were not being tried for permitting the minors to be in a place where intoxicating liquor was sold, but for contributing to their delinquency by furnishing them with such liquor. The jury was correctly instructed on the subject of what it must find before it could find defendants guilty of the offense charged.

---

to become occasionally or even frequently idle. Therefore, I charge you that unless you are convinced beyond a reasonable doubt that EUGENE H. DEIBERT did cause or tend to cause BOB WIERBINSKI, CALVIN LEONARD EPP or LARRY OREN KNIGHT to become more than frequently idle, then you must find the defendant, EUGENE H. DEIBERT, not guilty.

"I further charge you, that unless you are convinced beyond a reasonable doubt that LEO LONGLEY did cause or tend to cause BOB WIERBINSKI, CALVIN LEONARD EPP or LARRY OREN KNIGHT to become more than frequently idle, then you must find the defendant, LEO LONGLEY, not guilty.

6. "You are instructed that lewd and dissolute are terms often used interchangeably. Each applies to the unlawful indulgence in lust. Lewd is defined to mean: lustful, libidinous, lascivious, unchaste. Dissolute is defined to mean: loose in morals and conduct, wanton, lewd, debauched.

"Therefore, I charge you, that unless you are convinced beyond a reasonable doubt that EUGENE H. DEIBERT did cause or tend to cause BOB WIERBINSKI, CALVIN LEONARD EPP or LARRY OREN KNIGHT to become or tend to become lustful, libidinous, lascivious, unchaste, loose in morals and conduct, wanton or debauched, then you must find EUGENE H. DEIBERT not guilty.

"I further charge you, that unless you are convinced beyond a reasonable doubt that LEO LONGLEY did cause or tend to cause BOB WIERBINSKI, CALVIN LEONARD EPP or LARRY OREN KNIGHT to become or tend to become lustful, libidinous, lascivious, unchaste, loose in morals and conduct, wanton or debauched, then you must find LEO LONGLEY not guilty.

7. "Duly qualified experts may give their opinions on questions in controversy at a trial. To assist the jury in deciding such questions, the jury may consider the opinion with the reasons stated therefor, if any, by the expert who gives the opinion. The jury is not bound to accept the opinion of any expert as conclusive, but should give to it the weight to which they shall find it to be entitled. The jury may, however, disregard any such opinion, if it shall be found by them to be unreasonable."

It was not error to reject defendants' instruction No. 4. The jury was instructed as to the definition of "alcoholic beverage" contained in the Alcoholic Beverage Control Act, and since the proposed instruction would have been repetitious, it was properly refused. (*People* v. *Becker,* 94 Cal.App.2d 434, 443 [210 P.2d 871]; *People* v. *Eggers,* 30 Cal.2d 676, 687 [185 P.2d 1].)

No prejudicial error was committed in declining to give instructions 5 and 6. We need not reiterate that the terms "idle" and "lewd" are words of general knowledge requiring no definition to the jury in a case of this nature, and certainly not in the tendentious verbiage requested by defendants. Where, as here, all phases of the law applicable to the facts adduced were fully and correctly covered by other instructions, defendants were not entitled to have instructions on like matters given in any particular phraseology. (*People* v. *Tedesco,* 1 Cal.2d 211, 220 [34 P.2d 467].) Furthermore, they were not a correct statement of the law in the manner presented. Section 700 of the Welfare and Institutions Code is couched in the disjunctive, and a defendant may be found guilty if his act or omission causes or tends to cause a minor to lead a life that is either idle, lewd, dissolute or immoral. The tenor of the refused instructions was such as would compel the jury to acquit unless they found that defendants' acts or omissions caused or tended to cause the minors to come within all of the named categories of delinquency.

Defendants contend that the court's failure to give instruction No. 7 on the matter of expert testimony constitutes reversible error. Mr. Sutherland, in testifying that the minors were served with liquor, was not testifying as an expert nor was it necessary that he be so qualified as long as he was familiar with the taste of the intoxicants in question. (*People* v. *Mueller,* 168 Cal. 526, 528-529 [143 P. 750]; *People* v. *Bassetti,* 58 Cal.App. 390, 392 [208 P. 696].) Likewise, the testimony of Johnson, Deibert and Longley to the effect that a person, after drinking straight whiskey and water, could not discern whether or not "a bourbon and coke" actually contained whiskey, does not seem to have been given as that of experts. In fact, Longley testified that this phenomenon had been complained of by some of his customers, and he had made the experiment the night before his testimony was given. It would appear, therefore, that this was a matter peculiarly within the knowledge of any drinking layman.

Even if it be assumed that the failure to give the instruction was error, from a review of all the evidence and the charge as a whole, it would be unreasonable to conclude a different result would have been reached had the omitted instructions been given. The jury was instructed that it was the sole judge of the effect and weight of the evidence, and of the credibility of witnesses. Thus, if error there was, it did not result in a miscarriage of justice. (Cal. Const., Art. VI, § 4½; *People* v. *Brac,* 73 Cal.App.2d 629, 639 [167 P.2d 535]; *People* v. *Morris,* 110 Cal.App.2d 469, 478 [243 P.2d 66].)

Defendants urge as error the court's refusal to give an instruction on the need for corroboration of the testimony of accomplices, contending the minors were accomplices whose testimony required corroboration under section 1111 of the Penal Code. ▇▇▇ In answer to an identical argument the court stated, in *People* v. *Stanley,* 78 Cal.App.2d 358, 361 [177 P.2d 968]: "In a prosecution for contributing to the delinquency of a minor pursuant to section 702 of the Welfare and Institutions Code, corroboration of the minor's testimony is unnecessary since in such case the minor is regarded as a victim and not as an accomplice whose testimony it is necessary to corroborate under the provision of section 1111 of the Penal Code. (*People* v. *Lucas,* 16 Cal.2d 178, 181 [105 P.2d 102, 130 A.L.R. 1485]; *People* v. *Dorland,* 2 Cal.2d 235, 239 [40 P.2d 474]; *People* v. *Doetschman,* 69 Cal.App.2d 486, 489 [159 P.2d 418].)"

Finally, defendants contend that the trial court was guilty of prejudicial misconduct by which a fair trial was denied. They base this argument upon comments and remarks made by the judge during the course of the trial. They claim that he threw "his weight in connection with the evidence toward the prosecution." There is no merit whatever in this charge. Without reciting the remarks about which complaint is made, they appear to be no more than proper attempts by the judge to explain his rulings, expedite the trial, and obviate confusion in testimony. ▇▇▇ They were of such a nature that any possible prejudicial effect could have been cured by appropriate admonition to the jury to disregard them. Defendants, however, did not move to strike, nor assign as prejudicial, any remarks of the court. Neither did they suggest that the jury be instructed to disregard any of them. Failing thus to establish their record, defendants may not successfully assail on appeal the conduct of the trial judge.

(*People* v. *Galuppo*, 81 Cal.App.2d 843, 849 [185 P.2d 335] ; *People* v. *Harris*, 87 Cal.App.2d 818, 827 [198 P.2d 60].)

The judgment and order denying a new trial are, and each is, affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied May 8, 1953, and appellants' petition for a hearing by the Supreme Court was denied May 21, 1953.